——————o——————

CAPE GIRARDEAU & BLOOMFIELD MACADAMIZED AND GRAVEL ROAD CO., Respondent, *vs.* ANDREW J. RENFROE, Appellant.

1. *Conveyances—Validity—Record.*— A deed of land not recorded in the county where the land lies, is good between the parties thereto, and as to all others except purchasers without notice, for value.

2. *Condemnation of land—Road—Use—Title.*—An act of the legislature, giving a corporation the right to locate its road upon certain land, does not convey title to the land itself, so as to enable it to convert the lands which still belonged to individuals subject to the easement of the road, to entirely different purposes. Before the corporation can acquire the title, it must procure the condemnation of the land as provided by law.

3. *Estoppel depends upon facts—Not a matter of law.*—The question of estoppel depends upon facts, and estoppel is not to be presumed as a matter of law until the facts are found.

4. *Ejectment—Plaintiff must depend upon the strength of his own title.*—An instruction in an ejectment suit, that if defendant wrongfully entered upon the premises plaintiff must recover, is erroneous, as it makes the question of plaintiff's right depend only on the weakness of the defendant's title.

5. *Practice, civil—Instructions, conflicting—Trial by court.*—Although an instruction given for one party may be erroneous, and may seem to be contradicted by one given for the other, yet when the case is tried by the court, and the two instructions together correctly declare the law, the error will not be ground for a reversal.

6. *Ejectment—Damages, measure of.*—The measure of damages for the detention of a building, is not the amount plaintiff may have expended to provide another building in its place; it is the rents and profits down to the time of assessing the same.

*Appeal from Cape Girardeau Court of Common Pleas.*

*Houck & Ranney*, for Appellant.

*Lewis Brown*, for Respondent.

Vories, Judge, delivered the opinion of the court.

This was an action of ejectment to recover the possession of a house and a parcel of land named in the petition.

The petition was as follows, to-wit: "Plaintiff states that by an act of the General Assembly, entitled, 'An act to incorporate the Cape Girardeau and Bloomfield Macadamized and Gravel road Company,' approved Oct. 25th, 1857, plaintiff was duly incorporated. Plaintiff states, that on the 1st day of July, 1873, they were legally entitled to the possession of a certain building known as the Allenville toll house, situated in said county, at Allenville, and the ground on which the same stands, and being so entitled to the possession thereof, afterwards, to-wit: on the 2d day of July, 1873, this defendant unlawfully and wrongfully entered thereon, and wrongfully and unjustly detains plaintiff from the possession thereof, to plaintiff's damage in the sum of five hundred dollars. Plaintiff states that the monthly rents and profits of said realty are reasonably worth twenty-five dollars per month. Plaintiff demands judgment for the restitution of said premises, and for five hundred dollars for their damages, so as aforesaid had and sustained, as well as for twenty five dollars per month, monthly rents and profits."

The answer was a denial of the facts stated in the petition. A trial was had by the court, a jury having been waived by the parties.

On the trial the evidence introduced by the plaintiff tended to prove that those under whom the defendant claimed title to the premises in controversy, were, in the year 1854, in possession of and claiming a tract of land adjoining a river or

stream of water, called White Water, which tract of land in-' cluded the parcel of land in controversy; that in the year 1854, the County Court of Cape Girardeau county established and opened a county road through said tract of land, so possessed and claimed by those under whom the defend- ant claims title, and constructed a bridge across or over said stream of water, at or near the place where the toll house in controversy was afterwards erected; that the county road so established was forty feet wide. The evidence also tended to show that the land upon which the toll house was after- wards erected was included in the right of way occupied by said county road or adjoining thereto; that shortly after this county road was opened and the bridge erected, the bridge was washed away by high waters and wholly de- stroyed; that after the destruction of the bridge the county road ceased to be used as a public highway, until about the year 1862, when a temporary bridge was erected upon the same abutments erected for the original bridge, by the mili- tary authorities; after which the county road was again trav- eled and used as a public highway for a considerable time; that in the year 1857, the General Assembly of the State of Mo. passed an act incorporating the plaintiff; that said act of incorporation adopted a previous act of the General Assembly, which had been enacted in the year 1851, incorporating a similar company, as a part of the act incorporating plaintiff; that by said act plaintiff was authorized to construct an arti- ficial road from the city of Cape Girardeau in Cape Girardeau county, to the town of Bloomfield in Stoddard county. It is provided by the tenth section of said act of 1851, that the road to be constructed by plaintiff under its charter should be opened and kept free from all obstructions at least thirty feet wide, of which at least sixteen feet should be artificially constructed of timber, plank, stone, gravel or other hard ma- terial, so that the same should form a hard, smooth and even surface, etc.

By the eleventh section of the act the company was au- thorized to receive by deed, gift, purchase or other convey-

268 ST. LOUIS.

Cape Girardeau & Bloomfield   Macadamized and Gravel Road Co. v. Renfroe.

ance, a strip of land over which to construct its road, not exceeding one hundred nor less than forty feet in width. It was further provided, that if the company was not able to otherwise obtain the land for the road bed, land might be condemned to the use of the company for said purpose, in a manner pointed out in the statute.

The 12th section of the charter of plaintiff provided as follows : "It shall be lawful for said company to own in fee simple or otherwise, along the line of said road, or at any termination of the same, pieces and parcels of land for the purpose of procuring timber and other materials from the same for the use of said road, and for erecting thereon toll houses and for other purposes; and said company may at any time sell such tracts or parcels of land, or any part thereof, executing to the purchaser or purchasers a conveyance in manner prescribed by law regulating conveyance by corporations."

It is also further provided by said act, that if the necessary materials cannot be otherwise had for the construction of the road, the company may enter upon adjoining lands and take the necessary materials by paying therefor in a manner provided for in the act, etc.

The evidence produced by plaintiff tended to further prove that the plaintiff surveyed its road in the year 1857 or 1858, but that it did not construct its road and occupy the same at the point where the toll house was erected, or within several miles thereof, until the year 1866, at which time the road was constructed on the line and route of the county road before spoken of, and a new bridge constructed on the same abutments erected by the county for the bridge which had before been washed away ; at which time (in 1866) the plaintiff erected the toll house in controversy, which was constructed within about thirty feet of the centre of the artificial road constructed by plaintiff, and near the bridge ; that the plaintiff only claimed to locate its road forty feet wide ; that the defendant knew of the erection of the toll house at the time it was erected ; that the house had been occupied for

Cape Girardeau & Bloomfield    Macadamized and Gravel Road Co. v. Renfroe.

the purpose of a toll house by plaintiff, and that the defendant entered into the possession of the toll house without the consent of plaintiff, on the 15th of July, 1873, claimed title to the same, and withheld the possession of the house from plaintiff at the time suit was commenced. There was also some evidence given to show the damage done to plaintiff by the entry of defendant, and the value of the monthly rents of the house.

The defendant, on his part, offered in evidence a deed from Y. M. Powell to Michael Rodney, dated the 10th day of January 1842, which purported to convey a tract of land to said Rodney, which included the land on which the toll house in controversy stood, as well as that part of plaintiff's road adjacent thereto. This deed was objected to by the plaintiff, because it was acknowledged and recorded in Stoddard county and not in Cape Girardeau county, and could therefore impart no notice to plaintiff, and because defendant was estopped, he and his predecessors having permitted the right of way to be used for a county road.

These objections were overruled, and the deed read in evidence, to which the plaintiff excepted. The defendant then read in evidence several deeds, through all of which a title to said land was conveyed or purported to be conveyed and vested in the defendant. These deeds were each objected to as they were introduced, on the same ground of estoppel urged to the deed from Powell to Rodney. The objections were severally overruled and exceptions taken.

The defendant then introduced evidence tending to prove that he and those under whom he claims to derive title had been in possession of said lands for from twenty-five to thirty years before the commencement of the suit, claiming the same; and that the toll house was not erected or occupied until the year 1866, and that the house was erected with the knowledge of defendant and his grantors. The foregoing was substantially all the evidence in the case.

At the close of the evidence the court, at the request of the plaintiff, declared the law to be as follows: 1st. "The

jury is instructed that if they believe from the evidence, that the defendant on the 2d day of July, 1873, or since, unlawfully and wrongfully entered and took possession of the house known as the toll house, as described in the petition, the jury will find for the plaintiff."

3d. "The jury is instructed if they believe from the evidence that the County Court of Cape Girardeau county appointed commissioners to view and locate a public road from the city of Cape Girardeau to Bloomfield ; and if they further believe from the evidence that such commissioners did view and locate said road, and did make a report to said court, and that said report was by said court approved ; then the route so selected and approved became and was a public road of the county, and the plaintiff had, with the consent of the County Court, the legal right to take and occupy said road or any part thereof, for the use and purpose of constructing their road."

6th. "The jury is instructed that if they find for the plaintiff, they will, from the evidence, assess the damages plaintiff may have sustained in any sum not exceeding five hundred dollars. The jury will also from the evidence find the value of the monthly rents and profits of the premises in question; and if the jury believe from the evidence, that plaintiff, by the alleged wrongful and illegal act of defendant, was obliged to rent and fit up for a toll house other premises in the place of the one so taken, the measure of damages will be the reasonable amount plaintiff was obliged to pay for fitting up, and rent of the premises plaintiff was so obliged to rent and fit up."

To the giving of these instructions, or declarations of law, the defendant at the time objected and excepted.

The court at the request of the defendant, declared the law to be as follows, to-wit : 1st. "The court finds the law to be, that before the plaintiff can recover in this case, it must show title to the premises. 2nd. And further, that title may be acquired by an open and continuous possession, adverse and hostile to all persons whomsoever, of the defendant and those

under whom the defendant claims, for more than ten years previous to the institution of this suit. 3rd. And further, that the fact that the county may at one time have opened a road over the premises, cannot avail the plaintiff until some privity is shown to exist between the county and the company. 4th. And further, that although at one time a road may have existed, yet if the court is satisfied that said road was afterwards abandoned for a number of years by the public, the property reverted to the original owner, even if it should appear that the title to the premises was legally and properly acquired by the county; and a mere temporary abandonment, by reason of the washing away of a bridge, is not such an abandonment as would cause the property to revert."

And the court refused to declare the law in connection with the foregoing, as follows: "And further that, although the county may have acquired the title to the premises legally, yet that the county could not convey the said road to a private corporation."

The defendant excepted to the action of the court in refusing this last declaration of law. The court then found for the plaintiff, and rendered a judgment in its favor for the possession of the premises, and for the sum of seventy-two dollars and fifty cents damages, and for rents and profits, etc.

The defendant then filed a motion for a new trial, which being overruled, he appealed to this court.

Previous to an examination of the main and most material points involved in this case, it will not be amiss to briefly refer to the objections made by plaintiff to the admission of the deed from Powell to Rodney, read in evidence by the defendant. The objections were: 1st. That the deed had not been recorded in Cape Girardeau county; and 2d. That the defendant, by his acquiescence in the use of the strip of land by the county as a county road, was estopped from denying the right of the county and those claiming under the county, to the land included in the road.

As to the first of these objections it is sufficient to say, that the deed was good as between the parties thereto, and as to all others except such as had become purchasers of the land for value, without notice of the conveyance or title of the defendant; and there is no pretense made in this case that the plaintiff is a purchaser of the land for value, or without notice of the defendant's title, whatever that title may be.

The second objection to the deed is the same objection which was made to all of the defendant's evidence. The objection assumes that the county of Cape Girardeau had acquired a title to the land in controversy by estoppel, and that the plaintiff, as the successor of the county, acquired the rights of the county and could insist on the estoppel. It seems to me that this assumption or objection is founded on a misapprehension of both the facts and the law. The plaintiff in this case, if it has any right in the road bed of its road, did not derive that right from Cape Girardeau county; but from the act of the legislature creating its corporate existence. The plaintiff was authorized by that act to locate its road over and upon the route of the county road; but neither the county nor the State attempted to convey any right to the land on which the road was located to the plaintiff; and therefore the plaintiff could not avail itself of any privileges which had been conceded to the county, to justify it in converting the land belonging to individuals (only subject to the easement of a county road) to entirely different purposes. The plaintiff had a right to locate its road on the county road, but in doing so, in order to acquire a title to the land, it should have proceeded under its charter to appropriate the land necessary for its legitimate purposes. And, moreover, this question of estoppel depended upon the facts of the case, and could not be assumed as a matter of law, until the facts were found by the court.

The second objection urged to the action of the court, grows out of the giving and refusing of declarations of law asked for by the respective parties. It is difficult to see from the declarations of law made and refused by the court, upon

OCTOBER TERM, 1874. 273

Cape Girardeau & Bloomfield    Macadamized and Gravel Road Co. v. Renfroe.

what theory or principle the case was decided by the trial court. The first declaration of law or instruction given by the court was, when considered alone, clearly improper. By that instruction it is asserted by the court, that if the defendant wrongfully entered into the possession of the premises in controversy, the plaintiff must recover. This wholly ignores the fact as to whether the plaintiff has any title to the premises or not. But by the first declaration of law given on the part of the defendant, it is asserted that the plaintiff cannot recover until it shows title to the premises in itself. These two declarations of law would seem to conflict, and if the trial had been before a jury, might have had a tendency to mislead; but as this case was tried by the court, no such result is to be apprehended, and we think that the two instructions taken and construed together under such circumstances, were not improper or erroneous.

The declaration of law numbered three, given by the court for the plaintiff, assumes that if the County Court had located a road over the defendant's land, the plaintiff, under its charter, had a right, with the consent of the County Court, to take, use and occupy said road for the uses and purposes of its road. And the court refused to declare the law as asked for by the defendant, to the effect, " that the fact that the county may at one time have opened a road over the premises, cannot avail the plaintiff until some privity is shown to exist between the county and the company."

It would seem from the giving of the first of these declarations of law and refusing the last, by the court, that the court entertained the idea that the plaintiff could, by virtue of the power given it in its charter to locate and construct its road upon and over any county road, locate and construct its road over and upon any county road regardless of the rights of the owners of the land through which the road was located, or in other words, that the act of the legislature in such cases had the effect to transfer the title to the land, upon which the county road had been located, to the plaintiff.

18—VOL. LVIII.

This, I think, is a misconstruction of the law. The legislature only intended to permit the plaintiff to locate its road upon the same ground which had been occupied by the county road, but in doing so it was the duty of plaintiff to have the damage done to the owners of land by the location of its road thereon assessed, and see that the same was paid in conformity to the provisions inserted in its charter provided for that purpose. Until this was done, the plaintiff could acquire no title to the land upon which its road was located. There is not a particle of evidence in this case to show that either the county or the plaintiff had ever acquired any title to the land upon which the road was located, and even if it were admitted that the county had condemned the land to the use of a county road, it would make no difference. An owner of land might well consent to the appropriation of a strip of his land for the use of a county road, over which he and his neighbors could pass and travel at pleasure, and still object to the location of a road thereon over which he had no control, and could not travel without paying a private corporation for the use thereof. The legislature never intended to authorize the plaintiff to so appropriate the land of individuals without paying a just compensation therefor. If the legislature had so intended that the act should be so construed, the act would have been violative of the constitution of this State and void. (Williams vs. Natural Bridge, &c., 21 Mo., 580; Lackland vs. North Mo. R. R. Co., 31 Mo., 180; People vs. Gray, 25 Wend, 465; Dillon Mun. Corp., § 513; Trustees, &c. vs. Auburn & R. R. R. Co., 3 Hill, 567.)

It is however argued by the plaintiff, that the defendant stood by and saw the appropriation of the land for road purposes, and made no objection, and that defendant knew when the toll house was erected, and did not forbid its erection; and that therefore he is estopped from setting up any title to the property as against plaintiff. It has already been stated that it makes no difference whether the defendant consented to the easement over his land created by a county road, the title to the land would still remain in him, only subject to the easement.

As to the knowledge that defendant had of the erection of the toll house by the plaintiff, the evidence shows that the defendant knew at the time that the plaintiff erected the toll house of its erection; but the evidence strongly tends to prove that this house was not erected on the land appropriated for the road. It is shown that the plaintiff only claimed that its road was located forty feet wide, and the toll house is shown to be thirty feet from the center of the plaintiff's road, and it will be seen from the 13th section of plaintiff's charter, that it had no power to appropriate land upon which to erect a toll house, without the consent of the owner. It is authorized by the 12th section of its charter to own land for such a purpose, but it is left to the ordinary means of acquiring such property that is open to individuals.

It is true that it has been held by this court, that where an individual is proceeding under the law to have damages assessed for the right of way over his land for the use of the road bed of a railroad, and stands by and sees the road constructed and put in operation, such conduct amounts to a license to the railroad company to occupy the land, and that after large sums of money have been expended in the construction of the road and putting it in operation, the owner of the land cannot abandon his claim for damages, and bring ejectment to recover possession of the road bed; that the license thus given cannot be so revoked as to turn the road company into a trespasser; but that such a party has other remedies to which he may resort for the enforcement of his rights. (Provolt vs. The Chicago, Rock Island and Pacific R. R. Co., 57 Mo., 256.)

The present case does not seem to come within the rule laid down in that case. No such license was pleaded or relied on. The evidence only shows that the defendant knew of the erection of the house. There is no evidence that even tends to show that the defendant knew that the toll house was erected outside of the strip occupied as a road bed, by the plaintiff, as the evidence strongly tends to prove; but this is a question of fact to be tried with the other facts upon

the re-trial of the case, and may or may not become material to the rights of the parties.

The last point necessary to be noticed in this case is as to the measure of damages fixed by the court. In the 6th declaration of law as given by the court, on the part of the plaintiff, it is declared that the measure of damages to be recovered by the plaintiff, if the finding is in his favor, "will be the reasonable amount plaintiff was obliged to pay for fitting up and rent of premises plaintiff was obliged to rent and fit up." This rule of damages is clearly wrong. The damages as fixed by our statute in such cases are, where no waste is shown, the rents and profits down to the time of assessing the same, or to the time of the expiration of plaintiff's title, etc. (Wagn. Stat., 1870, p. 560, § 13; Cutter vs. Waddingham, 33 Mo., 269.)

Because, from the declaration of law given, it appears that the court tried the case on a wrong theory as to the law, and also improperly declared the rule of damages in such cases, the judgment will be reversed and the cause remanded ; the other judges concur.