BESSIE L. KOPPEL, Appellant, v. BLEN L. ROWLAND.—4 S. W. (2d) 816.

Division Two, March 24, 1928.

*Ludwick Graves, Foristel, Mudd, Blair & Habenicht* and *H. B. Cox* for appellant; *James T. Roberts* of counsel.

604

WHITE, P. J.—Plaintiff brought suit in the Circuit Court of St. Clair County, and at the June term, 1924, a trial before a jury resulted in a verdict and judgment for her for $7650. The court sustained defendant's motion for new trial on the ground that the cause of action was barred by the Statute of Limitations. Plaintiff appealed from that order.

Plaintiff was a sister of the defendant. The petition states that in 1897, in the State of Illinois, defendant came into possession of moneys belonging to plaintiff to the amount of five thousand dollars, and that the said money was wrongfully held by the defendant ever since that time; that after the collection of the money the defendant removed from the State of Illinois to the State of Kansas, and ever since has been a resident of the State of Kansas. Judgment was prayed for $12,950,—five thousand dollars with interest.

The answer of defendant admitted that plaintiff and defendant were residents of the State of Illinois, and that in the year 1898 defendant removed from the State of Illinois to the State of Kansas, and since has been a resident there. The answer then pleaded the five-year Statute of Limitations.

Defendant was twenty years older than the plaintiff. At the time of the trial, in 1924, he was seventy-three years of age, and the plaintiff fifty-three.

While the parties lived in Brown County, Illinois, there were seven children in the family. They received an inheritance from their grandfather's estate, their grandfather, it seems, having lived in St. Paul, Minnesota. The portion of that estate coming to each one of the Rowland heirs was about three thousand dollars. Out of that fund they each contributed seven hundred dollars as a trust fund for support of their father, who died in 1895. That trust fund was handled by the defendant, Blen L. Rowland. After the father's death the part belonging to the plaintiff was never paid to her. She was a minor at the time her share came from her grandfather's estate. That part also was held by Blen L. Rowland, as was also the plaintiff's money received from her father's estate—about five hundred dollars. He held it all for the plaintiff and at the time of the trial, it appears, had never made a settlement with her.

I.  It is first claimed by the appellant that Section 1317, Revised Statutes 1919, the five-year Statute of Limitations, does not apply because of the provisions of Section 1326, Revised Statutes 1919, which is as follows:

"If at any time when any cause of action herein specified accrues against any person *who is a resident of this State,* and he is absent therefrom, such action may be commenced within the times herein respectively limited, *after the return of such person into the State;* and if, after such cause of action shall have accrued, such person depart from and reside out of this State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."

It is argued by appellant that that section prevents the running of the Statute of Limitations because the defendant was at all times a resident of the State of Kansas and never a resident of the State of Missouri.  This, apparently, on the theory that although Section 1326 does not expressly exclude such an one from the operation of the statute it may be implied from the language.  That section is very explicit.  It stops the running of the Statute of Limitations if at the time a cause of action accrues "against any person *who is a resident of the State,"* and he is absent therefrom, such action may be commenced within the time limited "after the return of *such PERSON,"* meaning, of course, the "resident of the State."

The second part of the section provides that if "after such cause of action shall have accrued, *such person* depart from and reside out of this State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of *such action."*

"Such person" means the same thing in the second clause of the section as it does in the first clause—one who is a resident of the State.  The effect of the entire section is to deduct from the operation of the Statute of Limitations the time during which a *resident of the State,* against whom the cause of action accrues, shall be absent from the State.  The language is about as plain as it could be in the expression of that idea.

It has been held uniformly that as the statute now reads it does not apply to a debtor who is a nonresident of the State.  [Orr v. Wilmarth, 95 Mo. 212.]  Section 1326 appears first in the Revised Statutes of 1845.  In the revision of 1835 it was the same except that the expression "who is a resident of the State" was omitted.  While the section was in that shape it was held that it applied to a nonresident as well as to a resident.  [King v. Lane, 7 Mo. 241.]  But this court held in case of Thomas v. Black, 22 Mo. 330, that the insertion of the words "who is a resident of the State" changed the

effect of the statute so that it did not apply to a nonresident. We must give effect to the legislative intention as it appears in the legislative enactments. The statute originally in general terms applied to nonresidents as well as to residents. The change, making it apply specifically to one who is a resident of the State, manifests a legislative intent to restrict its operation to a resident.

The five-year statute, Section 1317, applies to *"all actions"* of a certain character, and Section 1326 creates exceptions which cannot be expanded beyond its terms. The legislative intent was to give preference to the jurisdiction of the defendant's residence. Where the cause of action is against a resident of the State he can be sued in the State and his absence from that jurisdiction tolls the statute. But if he is a nonresident of the State the jurisdiction would naturally attach where his residence is, and the plaintiff in such case has ample remedy in the State where the defendant lives.

II. The case was tried as an action at law, though from the facts stated it looks as if equitable relief could have been granted. In that case a different statute of limitations, or none, would apply. The money came into the hands of the defendant as a trust fund. The plaintiff was a minor at the time, and defendant probably never settled with her. The plaintiff testified: "My brother, B. L. Rowland, handled the investment for us," referring to the farm in which the money was invested. She said further, in relation to the fund received from her grandfather's estate: "B. L. Rowland was looking after the family's interest in the estate . . . B. L. Rowland got the fund first and distributed it among the heirs." And further, in relation to funds in the defendant's hands: "My brother B. L. Rowland never allowed me to do anything. He did it in my place . . . He handled the money and did what he wanted to with the money. I had nothing to say about it."

At one time, while defendant had possession of plaintiff's money, he bought a farm known as the Dunbar farm, and it was understood by the plaintiff that the Dunbar farm was to be conveyed to her; she thought that it was in her name. It turned out that it never was conveyed to her. A letter was introduced from the defendant to her, dated December 23, 1901, at Paola, Kansas, in which he said: "I made an agreement to pay you $25 per month until such time as I should make a *final settlement* with you."

Some time in 1906, 1907 and 1908, she was not sure about the date, while she was going through Kansas, she stopped off to see the defendant and asked him when he was going to pay her. She said she didn't say anything about the Dunbar farm at that time. The defendant in his evidence admitted that he had charge of the money of the plaintiff, and he attempted to explain his use of it. He made

this statement in his testimony: "There was never a time since I claimed I made full settlement with her by conveying to her the Dunbar farm that I didn't have sufficient property to have paid her if she had demanded it of me, anything I was owing to her."

It is unnecessary to quote further extracts from the evidence except to say that the defendant claimed he had settled with the plaintiff and the plaintiff claimed that no such settlement had ever been made; that she never received the Dunbar farm nor the proceeds of it. It appears that the letter of B. L. Rowland mentioned above was written after he claimed to have conveyed to her the Dunbar farm, although that is not clear.

Summarizing the testimony: defendant held funds of the plaintiff in trust, beginning when she was a minor and continuing when she was a married woman, and never had a settlement with her. In that case another principle would apply. That a Statute of Limitations does not run against a technical trust is well established. Where the relation is that of trustee of an express trust, such as an administrator, curator, or the like, the Statute of Limitations never runs against a claim of a *cestui que trust* until the trust is repudiated by the trustee. While that applies to a technical express trust there are circumstances when it applies to other trusts. It is said in Laughlin v. Laughlin, 291 Mo. l. c. 489, in regard to the Statute of Limitations in such case:

"Although the trust was not a technical express trust, because not in writing, as required by our statute, it was not an involuntary trust, but was created by consent and convention of the parties in property of which plaintiff was already the equitable owner. Under such circumstances, the Statute of Limitations does not commence to run until the trust is repudiated to the knowledge of the *cestui que trust*, the same as in the case of a technical express trust."

It is held that the Statute of Limitations does not run in cases of property held by a trustee *ex maleficio*. [Elliott v. Machine Co., 236 Mo. l. c. 567; Canada v. Daniel, 175 Mo. App. 55, l. c. 69.] In Moulden v. Train, 199 Mo. App. 509, l. c. 512, the Kansas City Court of Appeals held that an express trust could be proven, although not in writing.

In the Elliot case the opinion by Judge GRAVES cites Newton v. Rebenack, 90 Mo. App. 650, l. c. 659-666, where it was held that in a case where the suit was to enforce the performance of a trust, Section 1316, Revised Statutes 1919, the ten-year Statute of Limitations, applied.

Of course there are numerous cases in this State which hold that a trust in order to prevent the operation of the Statute of Limitations must be an express trust, as noted above. [Landis v. Saxton, 105 Mo. 486; Shelby County v. Bragg, 135 Mo. 291; Stoff v. Schuetze,

293 Mo. 1. c. 655.] Many other cases could be cited to the effect that it applies particularly to an express trust.

But the cases above quoted show exceptions to that general rule. Whether this case comes within those exceptions we do not decide. On the facts stated the plaintiff certainly can amend her petition so as to ask equitable relief. The facts stated in the original petition are sufficient to show that she is entitled to an accounting. Extracts from the evidence, quoted above, indicate that plaintiff may be able to make such proof as would bring the case within the principle that a Statute of Limitations does not run in favor of a trustee in charge of trust funds.

The trial court was in error in holding that the five-year Statute of Limitations applied, and since the case was presented entirely on the theory that it was an action at law and was submitted to a jury as such, the court was correct in sustaining a motion for new trial.

The judgment accordingly is affirmed and remanded with directions to the trial court to proceed in accordance with the views expressed in this opinion, and the plaintiff if so advised may amend her petition accordingly. All concur.