# OCTOBER, 1934.

KATE CUNNINGHAM, AND GEORGE STEPHEN, ADMINISTRATOR OF THE ESTATE OF J. W. SIMONS, DECEASED (PLAINTIFFS), RESPONDENTS, v. WM. A. KINNERK, EXECUTOR OF THE ESTATE OF KATE HARRIS, DECEASED (DEFENDANT), APPELLANT.—74 S. W. (2d) 1107.

St. Louis Court of Appeals. Opinion filed October 2, 1934.

*H. A. Loevy* for appellant.

*Arthur L. Wackwitz* and *H. Brammer* for respondents.

BENNICK, C.—This is a suit in equity by which plaintiffs are jointly pursuing a trust fund in the hands of defendant executor.

The parties having to do with the establishment of the trust and with the present controversy growing out of it are James E. Campbell of Madisonville, Kentucky; his sister, Sophronia Martin; her children, Kate Cunningham, J. W. Simons, and Edwin N. Harris; and the latter's widow, Kate Harris.

The facts, as found by the court, or as they stand undisputed in the record, disclose that prior to his death in 1909, James E. Campbell had intrusted to his nephew, Edwin N. Harris, the sum of $5,787 to be invested by the latter in real estate in the City of St. Louis, the same to be held for and to Campbell's use and behalf. In conformity with the terms of the trust so created, Harris invested the money in the erection of a building upon a lot owned by his wife, Kate Harris, the same being known as 1245-1247 Walton Avenue, in the City of St. Louis; and it was, of course, as a consequence of such use of the trust fund that Kate Harris is alleged thereafter to have become a trustee for the use and benefit of Campbell and his heirs after his death.

In 1904, Campbell had executed his last will and testament before two subscribing witnesses, by the terms of which, after providing for certain specific bequests, he devised the residue of his estate to his sister, Sophronia Martin, his niece, Kate Cunningham, and his nephew, Edwin N. Harris, in equal shares. Shortly following his death the will was duly admitted to probate in Hopkins County, Kentucky, on October 4, 1909, from and after which it became effective for the purposes relied upon by the parties plaintiff in this case.

Threatened with the prosecution of an action brought against them for damages for breach of contract, Mr. and Mrs. Harris, by warranty deed executed on July 10, 1915, conveyed the real estate in question to Kate Cunningham for the nominal consideration of $10. So the title stood until December 19, 1921, some few months after the settlement of the pending litigation, when Kate Cunningham, by quitclaim deed, reconveyed the property to Kate Harris individually for the consideration of $1, the conveyance being made expressly subject, however, to her own undivided one-third interest in the estate of James E. Campbell.

The court specifically found that the quitclaim deed was drawn, and its execution by Kate Cunningham procured, by defendant, Wm. A. Kinnerk, who at the time was acting as agent and attorney for both Mr. and Mrs. Harris. Such finding of the court was undoubtedly prompted by the fact that throughout the trial there had been considerable bickering back and forth between counsel as to the motive which had governed defendant as such attorney in inducing Kate Cunningham to sign the deed containing the clause reserving her in-

terest in the Campbell estate, whether merely to mislead her into believing that she was reserving the rights of all the Campbell heirs in the property, or whether it was actually his purpose to have the reservation accomplished and acknowledged by the execution of the deed.

Edwin N. Harris died on March 17, 1923, without leaving descendants capable of inheriting, and Kate Harris died on January 17, 1926. Thereafter, defendant, Wm. A. Kinnerk, was duly appointed and qualified as executor of her estate, letters testamentary being granted him on January 26, 1926.

On November 19, 1926, defendant, as executor of the estate of Kate Harris, sold the property in question to the highest bidder for cash for the sum of $19,150, the primary purpose of the sale being to remove and satisfy an outstanding encumbrance of $4,500, and a secondary reason perhaps being to attempt to circumvent the Campbell heirs in the assertion of a claim against the property which they had in fact been asserting since shortly after the death of Edwin N. Harris in 1923, after a document executed by Harris in acknowledgment of his status as trustee for Campbell had been found among Campbell's papers and effects. Admittedly there is now a balance in the estate of some twelve or fourteen thousand dollars.

On November 17, 1926, two days before the above sale, Kate Cunningham instituted her suit in the Circuit Court of the City of St. Louis against defendant, Kinnerk, as executor of the estate of Kate Harris, deceased, to establish her own individual and undivided equitable interest in the estate, such interest being found to be the sum of $1,929, representing one-third of the original trust fund, and arising out of the devise to her as one of the three residuary legatees designated in James E. Campbell's will. Recovering in the circuit court for the full amount of her interest in the fund, the case was appealed on behalf of the estate to this court, wherein, on January 10, 1926, the judgment of the circuit court was in all respects affirmed. [Cunningham v. Kinnerk (Mo. App.), 1 S. W. (2d) 241.]

Obviously that decision, though not *res adjudicata* as to the present suit because, if for no other reason, of a difference in the identity of the parties, is nevertheless of prime importance, since it involved the establishment of the very trust now in inquiry, as well as the question of the rights of the claimants to their respectiive shares of the fund under the residuary clause of the will of James E. Campbell.

Meanwhile Sophronia Martin had herself died intestate on May 20, 1925, leaving no debts unpaid, and leaving Kate Cunningham and J. W. Simons, the plaintiffs herein, as her only surviving children and heirs at law. Consequently, Kate Cunningham and J. W. Simons at once succeeded as the heirs at law of their mother to an undivided one-half share each in the share of their mother in the

estate of her deceased brother, James E. Campbell, the interest of Sophronia Martin (as in the case of Kate Cunningham), being an undivided one-third share of the residuary estate of James E. Campbell pursuant to the terms and directions of his will.

And so, whereas the former case which reached this court on appeal (Cunningham v. Kinnerk, supra), was a suit by Kate Cunningham individually, as a residuary legatee under the will of James E. Campbell, to establish and recover her own individual equitable interest in the property or the fund derived from its sale, this case presents the demand, prosecuted jointly, of Kate Cunningham and J. W. Simons, as the sole surviving heirs at law of Sophronia Martin, to establish and recover the interest of Sophronia Martin in the fund, to which interest they succeeded upon her death, as we have already pointed out. But, of course, it should be borne in mind, as we have likewise pointed out at an earlier stage of the opinion, that the trust to be established is the identical one which was under consideration in the former case, and that Sophronia Martin's interest in the fund arose out of the same clause of James E. Campbell's will upon which Kate Cunningham's identical, individual interest was based and upheld.

The present suit was instituted in the Circuit Court of the City of St. Louis, on March 16, 1929. However, prior thereto, in February, 1928, both Kate Cunningham and J. W. Simons had exhibited their claim for allowance to defendant as executor of the estate of Kate Harris, said estate being under process of administration in the Probate Court of St. Louis County. The purport of the claim so filed was not that the two claimants should simply share as general creditors in the estate, but rather that the trust fund should be taken in its entirety out of the assets of the estate, and be paid over to them as the beneficiaries of the fund. Disallowed in the probate court, an appeal was taken to the Circuit Court of St. Louis County, wherein, on January 21, 1929, the claim was again disallowed; and there the matter stopped, no appeal being taken to this court.

Defendant argues with much insistence that plaintiffs are now barred as to this suit by such former adjudication, while plaintiffs argue, to the contrary, that inasmuch as their claim was one in equity in pursuit of a trust fund in the hands of defendant executor, the probate court could have acquired no jurisdiction over the subject matter of the demand, and the circuit court could have derived no jurisdiction by the appeal to it, all of which served to render such prior adjudication a nullity. But of this we shall have more to say anon.

It would appear that in any event the claim, if it could otherwise be regarded as an ordinary demand against the estate, would have been barred by limitation of time when filed in the probate court in

February, 1928, letters testamentary having been granted defendant in January, 1926. But, of course, so far as this case is concerned, the nature and character of the claim itself is the matter of importance, and the question of whether it was timely presented in the probate court is of no consequence if that court, because of the equitable relief called for, could in no event have acquired jurisdiction to try the claim on its merits.

The petition upon which the trial was had alleged that the cause of action stated was the "joint demand" of the two plaintiffs, though what the pleader undoubtedly had in mind to say was that it was being prosecuted jointly; it set out the creation of the trust and plaintiffs' succession to the interest of their mother, Sophronia Martin, therein, as provided for by the terms of the will of James E. Campbell; and it further pleaded that the judgment rendered in the case of Cunningham v. Kinnerk, supra, was *res adjudicata* of the issues in this case. The prayer was that plaintiffs be adjudged to be the sole heirs at law of Sophronia Martin, and that they have and recover from defendant, as executor of the state of Kate Harris, the one-third share of Sophronia Martin in the estate of James E. Campbell, the same being then mingled with and held among the assets of the estate of Kate Harris, with interest on the sum of such share from December 19, 1921. Evidently such date was selected from and after which interest should run because it was on that date that Kate Cunningham conveyed the property by quitclaim deed to Kate Harris, the theory being that by reason of the reservation contained in the deed so executed, the status of Kate Harris as trustee became thereby fixed and established.

On March 26, 1931, J. W. Simons died, and thereafter the cause was revived as to him in the name of George Stephen, the duly appointed and qualified administrator of his estate.

Defendant filed separate answers as to each of the plaintiffs, the answers being identical save that as to plaintiff Stephen, the administrator of the estate of J. W. Simons, it was alleged that inasmuch as the property in question was real estate, the proceeds of the sale thereof by defendant remained real estate in legal fiction, so that upon the death of J. W. Simmons, his share thereof, if any, passed to his heirs and not his administrator.

Otherwise the answers, in addition to general denials, pleaded the five and ten-year statutes of limitation and the one-year special probate statute of limitation; that the cause of action sued on was not of a joint nature or character, but that the right, if any, of each plaintiff was separate, single and individual; that the judgment in the case of Cunningham v. Kinnerk, supra, was not *res adjudicata* as to J. W. Simons, who was not a party to that case, nor was his cause of action the same; and that the adjudication against plain-

tiffs' claim in the probate and circuit courts of St. Louis County was conclusive as to their right to recover in this suit.

The reply was in the conventional form.

A trial was had, with judgment for plaintiffs rendered on October 9, 1933, the judgment being that each plaintiff have and recover of defendant, as executor of the estate of Kate Harris, the sum of $964.50, as and for his or her one-half share of the principal share of Sophronia Martin, with interest thereon at the rate of six per cent per annum from October 4, 1909 (the date of the probate of James E. Campbell's will), aggregating the sum of $2,353.88 due each plaintiff. The facts as found by the court to support its judgment were about as we have heretofore narrated them in our statement of the case. Defendant's appeal to this court has followed in the usual course.

Taking up the numerous points raised by defendant in somewhat of a logical order, we note first his contention that plaintiffs acquired no title as heirs at law of their mother, Sophronia Martin, to James E. Campbell's property, if any, in Missouri, because, although the will of Campbell was concededly admitted to probate in Kentucky, the State of his residence and decease, it was not filed for record in the recorder's office in the City of St. Louis, or admitted to probate in the Probate Court of the City of St. Louis, in consequence of which defendant claims that no title passed to Sophronia Martin, whose claim to an interest in the Missouri property was solely as a residuary legatee under such will.

He attempts to base his argument upon the terms of section 552, Revised Statutes 1929 (Mo. St. Ann., sec. 552, p. 338), which provides, among other things, that any will admitted to probate in any State, together with the order admitting the same to probate therein, certified according to act of Congress, shall be admitted to probate in this State in any county where real estate is affected thereby, or filed in the office of the recorder of deeds in such county, and that all such wills so certified, theretofore admitted to probate in any such county, or filed for record in any such recorder's office, shall give notice thereof, and they, or certified copies thereof, shall be admitted as evidence in all courts in this State.

This section is, of course, to be read along and in harmony with sections 254, 549, Revised Statutes 1929 (Mo. St. Ann., secs. 254, 549, pp. 164, 337), the substance of which, following the general doctrine applied in such matters, is to provide that for a foreign will to be of any validity as disposing of real property in this State, it must have been executed according to the laws of this State. So far as personalty is concerned, the requirement is otherwise, the execution of a foreign will according to the law of the testator's domicile rendering it effective to pass title thereto upon the theory that personal property has no locality, but is subject to the law which governs the

person of the owner. [Thomas v. McGhee, 320 Mo. 519, 8 S. W. (2d) 71; White v. Greenway, 303 Mo. 691, 263 S. W. 104; Keith v. Keith, 97 Mo. 223, 10 S. W. 597, 68 C. J. 624.].

It becomes at once apparent, therefore, that the character of the Campbell estate in Missouri, whether real or personal, must be determined in view of the material and substantial distinctions existing in the requirements for the disposition of the two forms of property by foreign will; and as to this feature of the case we can reach no other conclusion than that the Campbell interest under inquiry, though concededly an undetermined, undivided equitable interest at the time of both Campbell's and Sophronia Martin's death, was nevertheless real property. Even as between Campbell and Edwin Harris, the terms of the trust were indefinite other than that the funds were to be invested in St. Louis real estate; but as between him and Kate Harris, there was no proof of any contractual relations whatsoever, so that her status as to Campbell was at least that of a trustee under a resulting trust, which is one raised by implication of law to meet the ends of justice where, as here, the money invested was that of the one party, with legal title to the improved property vested solely in the other party. [Stevens v. Fitzpatrick, 218 Mo. 708, 723, 118 S. W. 51; Sanford v. Van Pelt, 314 Mo. 175, 282 S. W. 1022; Ebert v. Myers, 320 Mo. 804, 9 S. W. (2d) 1066.] And where one holds title to land as trustee for another, it is an interest in real estate he holds, and not personal property, an interest which upon the death of the beneficiary intestate (as in the case of the death of Sophronia Martin), descends to his heirs, and in the recovery of which, in the absence of debts of the estate, the beneficiary's administrator is not concerned. [McKee v. Downing, 224 Mo. 115, 126, 124 S. W. 7; Johnston v. Johnston, 173 Mo. 91, 121, 73 S. W. 202; Clay v. Walker (Mo. App.), 6 S. W. (2d) 961, 965; 65 C. J. 526.]

But though the above is true, we do not understand that title to real estate is directly involved in this proceeding so as to oust us of jurisdiction over the appeal, for upon the whole record the suit ultimately resolves itself into one for the recovery of a money judgment for a sum representing the value of the respective shares of plaintiffs in and to the share of their mother, Sophronia Martin, the same being held by defendant among the proceeds derived from the sale of the piece of property long before this suit was begun. [Clay v. Walker, supra.] In other words, it is a pecuniary right which is sought to be and is determined, though dependent in a sense upon the question of the former condition of the title to land; and the judgment of the lower court is one for the payment of money, without in anywise affecting the title to real estate itself. Were the situation otherwise, we would have had no jurisdiction in Cunningham v. Kinnerk, supra, which we entertained on the merits on that appeal.

Now there is no dispute but that Kate Cunningham and J. W. Simons, as the sole surviving heirs at law of Sophronia Martin, took whatever title she acquired under the Campbell will to his real estate in St. Louis, so that the question for our determination is whether such will had the effect of passing title to Missouri real estate, it having been executed and probated in Kentucky, and not having been probated in St. Louis where the land lay, and not having been filed for record in the office of the recorder of deeds here. We think that under the circumstances of this case, and as between these parties, the will was sufficient to pass title.

Generally speaking, the probate of a will in another State is a judicial proceeding, to the record of which full faith and credit is to be given when certified according to the act of Congress. However the full faith and credit clause of the Constitution and the act of Congress apply only in so far as the court of the foreign State had jurisdiction; and the court of a foreign State is without jurisdiction over the title to lands located in another State. [Keith v. Keith, supra; Hines v. Hines, 243 Mo. 480, 147 S. W. 774.] When a foreign State admits a will to probate, it merely adjudges it to be the will of the deceased and to have been executed so as to comply with the laws of that State,—an adjudication to which we are obliged to give full faith and credit; but the foreign court does not undertake to say that the will is sufficient to transmit title to Missouri land, a question over which it could have no jurisdiction; and not having assumed to make any such adjudication, the fact of the probate of the will in the foreign State does not in and of itself have the credit even in that State of affecting the title to land in this State, and we are therefore not called upon to give it a credit here that it does not have in the State of its own execution and probate. Consequently, the force and effect which we must give to the foreign probate of a will in so far as real property in this State is concerned depends upon the statutes heretofore referred to having to do with the question of the devise by a nonresident of real estate owned in Missouri and the use of such will in proceedings in the courts of this State. [Keith v. Keith, supra; Thomas v. McGhee, supra.]

Now the point here is not that Campbell's will was not executed according to the law of this State, nor that it was inadmissible in evidence in this suit, but merely that it was neither offered for admission to probate here nor filed for record in the office of the recorder of deeds. The decisive question, therefore, is what the effect of the failure to have taken either of such steps was as against Kate Harris, the record owner of the property, upon the right of Sophronia Martin to have taken title to Campbell's real estate in St. Louis as a residuary legatee under his will.

Quite obviously, from the plain implications of the statute, either

the probate of a foreign will in this State, or its filing for record with the recorder of deeds, both of which acts are put upon a parity by section 552, supra, is a mere ministerial act in determining the validity of the will to pass title to realty located in this State. It is from the foreign adjudication that the will derives its validity as the will of the deceased, and the ancillary proceeding in the local jurisdiction serves merely to give binding notice thereof, or to adopt the will subject to the limitations interposed by the *lex rei sitae* so far as real estate may be affected thereby. [Thomas v. McGhee, supra.] Consequently we think it must follow that a foreign will, unrecorded in this State and not proved anew (assuming it to have been executed according to our laws as this one was), will have the same force and effect as an unrecorded deed (Keith v. Keith, supra; Graves v. Ewart, 99 Mo. 13, 11 S. W. 971; Van Syckel v. Beam, 110 Mo. 589, 19 S. W. 946), which is good as between the parties thereto and all others except purchasers for value without notice, but, of course, constituting constructive notice to no one. [Cape Girardeau & Bloomfield Macadamized and Gravel Road Co. v. Renfroe, 58 Mo. 265.]

Here there can be no doubt but that Kate Harris had or is to be charged with knowledge of the outstanding Campbell interest, because in 1921 she employed defendant as her attorney to draw the quitclaim deed by which Kate Cunningham was to reconvey the property to her, and in which Kate Cunningham's undivided one-third interest in the estate of James E. Campbell was specifically reserved. Obviously, if Kate Cunningham had a one-third interest, there must have been a corresponding two-thirds interest also outstanding in one or more other parties. And of course Kate Harris knew of such interest prior to the time of the drawing of the deed, because it was on account of her knowledge that the reservation was written into the deed. Consequently, having had notice, she and her executor are bound by the terms of the will disposing of Campbell's interest; and the fact that it was neither filed for record here nor proved anew avails defendant nothing in resisting plaintiffs' claims.

Closely analogous to a portion of our discussion under the above point is the claim of defendant that the court erred in not adjudging that the right and interest of the original plaintiff, J. W. Simons, passed on his death to his heirs and not to his administrator; and that consequently, regardless of the merit of Kate Cunningham's cause of action, her coplaintiff, Stephen, is not entitled to recover herein in the capacity of administrator of the estate of J. W. Simons. It will be recalled that suit was filed on March 16, 1929; that Simons died on March 26, 1931; and that shortly thereafter Stephen was appointed and qualified as the administrator of his estate for the purpose of reviving Simon's cause of action.

764

What defendant is relying upon is the rule that where real estate is sold under order of the probate court for the payment of the decedent's debts, the surplus remaining after such payment is made retains the character of realty for the purpose of succession or distribution, and goes to the heir or devisee in whom the title to the real estate was vested when it was converted. [State to use v. Doud, 216 Mo. App. 480, 269 S. W. 923; Arrowood v. Delaney's Estate (Mo. App.), 295 S. W. 522; Kreyling v. O'Reilly, 97 Mo. App. 384, 71 S. W. 372.]

The reason for such rule is, of course, that when a person dies the owner of real estate, the title to such real estate passes to and vests in the heir or devisee *eo instante*, subject only to the right of the administrator or executor to sell the same for the payment of the debts of the decedent; and inasmuch as the character of property for purposes of descent or distribution is generally that impressed upon it at the death of the decedent, its character for such purposes is not permitted to be altered during the course of the administration by any conversion looking to the satisfaction of the debts of the estate. [State to use v. Doud, supra.]

But we think that such doctrine has no application here since Kate Cunningham and J. W. Simons were not the heirs of Kate Harris, the decedent owner of the property, and therefore the assertion of their present claims is in nowise dependent upon any kinship to her. Strictly speaking, the Campbell interest in the property, never having been the property of Kate Harris during her lifetime, could not have become a part of the assets of her estate at her death, and therefore was never subject to the payment of her debts. [Clay v. Walker, supra; Bond v. Unsell (Mo. App.), 72 S. W. (2d) 871; 23 C. J. 1150.] But aside from all this, the property had been sold and converted into cash by defendant on November 19, 1926, long prior to the time the present suit was filed. What Simons had, both at the institution of his suit and at his death, was a vested interest in the proceeds of land previously sold. As we have already pointed out, regardless of the character of the property for the purpose of determining whether title passed to Sophronia Martin by the Campbell will, the purpose of this suit is simply to pursue trust funds in the hands of defendant executor, with plaintiffs accepting the status of the estate as they found it; and title to real estate is not involved. [13 C. J. 882; 23 C. J. 1138.] The claim is one which Stephen might have maintained as administrator even if the suit had not previously been instituted by Simon, and therefore, for purposes of its prosecution, it was subject to be revived in Stephen's name as administrator.

The purpose of the suit being the pursuit of a trust fund which the court is asked to take in its entirety out from among the assets of Kate Harris's estate with which it is mingled and to order the

same to be paid over in its entirety to plaintiffs as the beneficiaries of the fund, equity alone has jurisdiction over the claims, and the probate court acquired no jurisdiction over the claims previously filed therein, the issue being one of subject matter. [Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S. W. 642; Clay v. Walker, supra; Abernathy v. Hampe (Mo. App.), 53 S. W. (2d) 1090; Dietrich v. Jones, 227 Mo. App. 365, 53 S. W. (2d) 1059; Bond v. Unsell, supra.] There is no question here of plaintiffs having attempted to proceed in the probate court by waiving the trust and suing as general creditors of Kate Harris's estate; and, as we have already pointed out, the Campbell fund was actually no part of her estate. Consequently the adverse judgment of the Probate Court of St. Louis County, as well as of the Circuit Court of St. Louis County, exercising its derivative jurisdiction on the appeal to it, were not res adjudicata of the merits of the plaintiffs' claims. [State Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S. W. 116.] While the lower court did not make an express finding upon this question, the fact that it proceeded to a judgment in favor of plaintiffs, and against defendant, indicates that it found sub silentio, and properly so, that such defense was without merit. And, of course, since the subject matter of the claims was outside the jurisdiction of the probate court, they were not required to be exhibited to it, and defendant's plea of the one-year special probate Statute of Limitation (section 75, R. S. 1929; Mo. St. Ann., sec. 75, p. 45), was likewise without merit.

Nor was the suit necessarily barred by either the five or ten-year general Statutes of Limitation (sections 861, 862, R. S. 1929; Mo. St. Ann., secs. 861, 862, pp. 1139, 1143), both of which defendant has set up as defenses without designating which of the two he regards as applicable. What defendant argues is that Sophronia Martin's cause of action accrued to her in 1909, upon the probate of Campbell's will; that inasmuch as she took no action to enforce her rights under the will at any time though she lived until 1925, her right of action became barred in 1914, or at best in 1919; and that she being barred, necessarily the plaintiffs as her heirs are likewise barred.

The lower court made no express finding upon this issue in the case, though as we pointed out above it obviously must have believed that the defense was not well taken.

As a general rule, while the Statute of Limitations begins to run against an implied or resulting trust as soon as the facts are brought to the knowledge of the cestui que trust so that he can take steps to enforce the same (Shelby County v. Bragg, 135 Mo. 291, 36 S. W. 600; Freeland v. Williamson, 220 Mo. 217, 119 S. W. 560), such statutes will not run against technical, express trusts until the trust is repudiated by the trustee, since the possession of the trustee is to

be regarded as the possession of the beneficiary, and the trust is a continuing one. [Koppel v. Rowland, 319 Mo. 602, 4 S. W. (2d) 816; Bender v. Zimmerman, 80 Mo. App. 138.]

And it is said too that such latter rule, while particularly applicable to technical, express trusts, may also apply in the case of a trust recognized or created by the consent and convention of the parties, as in property of which the plaintiff was already the equitable owner, or in which he had an equitable interest. [Laughlin v. Laughlin, 291 Mo. 472, 237 S. W. 1024; Koppel v. Rowland, supra.]

Such exception fits the situation at bar in all material respects. Sophronia Martin's equitable interest in Kate Harris' property dated from the death of James E. Campbell. So likewise did the interests of the other residuary legatees of whom Kate Cunningham was one. Kate Harris, as distinguished from her husband, Edwin N. Harris, may have been no more than a trustee under a bare resulting trust as to Campbell because of the lack of proof of any agreement between the two, but in 1921, she procured the preparation and execution of the quitclaim deed, reconveying the property to her, in which the existence of the interest of the Campbell estate was expressly recognized, and by which she should be bound. [Morgner v. Hunting (Mo. Sup.), 232 S. W. 88.] Nor does the evidence point to the conclusion that she herself ever thereafter repudiated the trust. The most she ever did was to conduct an investigation as to the full nature of the claims of the Campbell heirs. Thus we think that as between the Campbell heirs and Kate Harris, the proof warrants the finding that they recognized a continuing trust, and so treated Kate Harris' ownership of the property until her death; and with such continuing trust established and recognized, and not repudiated by the trustee, no Statute of Limitations would run.

Defendant has a great many points based upon the question of the sufficiency of the evidence to have shown the status of Kate Harris as trustee in respect to the Campbell funds invested in her property, but all such points may be ruled against his contention upon the authority of Cunningham v. Kinnerk, supra, which, while not *res adjudicata* as to this case, is necessarily persuasive as to our decision herein upon the identical state of facts.

But granting for argument's sake that she was a trustee, he makes the point that plaintiffs should not recover because the subject matter of the trust has now been reconverted into money, and there is no way of identifying the original property through the change in its original form. This contention is utterly without merit. The doctrine which once required one following trust funds into the hands of another to be able to earmark and identify such funds in specie has long since happily been exploded. [Clay v. Walker, supra.]

The insistence that plaintiffs and their mother, Sophronia Martin,

should be adjudged guilty of laches in not having prosecuted their claim sooner likewise stands for disapproval. The question of laches is to be determined from the facts of each case. Here the claim of laches should undoubtedly not lie since Kate Harris, after recognizing the Campbell interest in the property, had not thereafter repudiated the trust, and was in nowise prejudiced by the fact that the claim for Mrs. Martin's interest had not been asserted earlier. [Davies v. Keiser, 297 Mo. 1, 246 S. W. 897.] Otherwise the situation might be regarded differently, since equity does not look with favor upon delay in the assertion of a claim until after the party to be charged is dead and so unable to offer his defense.

He also argues that plaintiffs are not entitled to recover on a joint demand, because as heirs of Sophronia Martin, their claims are distinct, separate, and individual. He is right in thus characterizing the nature of their claims, and the statement in the petition that they were suing upon a joint demand was concededly inappropriate. However the facts pleaded in the petition as the basis for the cause of action show the real nature of the case, which was the joinder by plaintiffs in the assertion of their separate claims against the same defendant and depending upon the identical proof. Under such circumstances, the suit being in equity, the joinder of the plaintiffs in the prosecution of the same was entirely proper. [Ballew Lumber & Hardware Co. v. Missouri Pac. R. Co., 288 Mo. 473, 232 S. W. 1015; Shelton v. Harrison, 182 Mo. App. 404, 167 S. W. 634.]

Certain minor points are raised with respect to the admission and exclusion of evidence. These points need not be considered *seriatim*, since no adverse ruling of the court thereon would have affected the result. Everything has been preserved in the record, and upon such record, regardless of the particular rulings of the trial court, we render such judgment as in equity the pleadings and evidence may warrant. [Cunningham v. Kinnerk, supra.]

Complaint is also made that the court did not expressly decide each and every issue raised by the separate answers of the defendant. As we have already pointed out, the judgment for both plaintiffs was necessarily a denial of all defenses interposed. But at any rate, we ourselves have expressly determined the points thus adverted to, and so the rights of defendant are not at all prejudiced.

Still another point is that the court erred in overruling defendant's motion to dismiss the suit which was made at the close of the whole case. As a matter of fact it was not made at the close of the whole case because thereafter the case was reopened, and a great deal more evidence introduced. Aside from this, however, such a motion had no place in this, a suit in equity. The court was warranted in taking the case under advisement, and was not required to render judgment immediately on the merits. [Cuthbert v. Holmes (Mo. Sup.), 14 S.

W. (2d) 444; Troll v. Spencer, 238 Mo. 81, 141 S. W. 855.]

The suggestion is made in the brief that the judgment is not in proper form because it makes no provision for its classification as a demand against the estate. Suffice it to say that while the judgment is against defendant as executor of the estate, it will not constitute a demand against the estate, and will not be classified as in the case of demands. Rather, the effect will be, as we have already pointed out, to remove this fund in its entirety from among the assets of the estate of which it has technically never been a part, not having been the property of Kate Harris during her lifetime. [Clay v. Walker, supra; Bond v. Unsell, supra.]

Finally defendant argues that it was error to allow plaintiffs interest on the principal due them from October 4, 1909, the date of the probate of James E. Campbell's will, when the petition had claimed interest only from December 19, 1921, the date of the execution by Kate Cunningham of the quitclaim deed reconveying the property to Kate Harris. In fact, he rather suggests that interest should be allowed only from the date of demand, which he thinks should be regarded as June 3, 1923, the date of a letter from Kate Cunningham to Kate Harris in regard to her rights in the estate.

So far as the question of plaintiffs' right to interest is concerned, it would seem that the court's theory regarding its allowance was correct. The liability of Kate Harris for the payment of interest is based upon her private use of the property into which the trust fund had gone (Cruce v. Cruce, 81 Mo. 676, 685; 65 C. J. 828); and interest should run from the time of the appropriation of the fund. [65 C. J. 832.] In other words, interest is allowed under such circumstances, not for the purpose of punishing the trustee, but rather to compensate the beneficiary for the trustee's actual or presumed gains from his personal use of the trust property. It follows, therefore, that in such a case, not depending upon an agreement between the parties, where the use of the trust money is the ground of the trustee's liability, no demand for payment is necessary to start the running of interest, the allowance being instead to adjust the equities between the parties. [65 C. J. 832.]

In this view of the matter, the allowance of interest from October 4, 1909, when Sophronia Martin's rights under the Campbell will became vested, was proper unless it be, as defendant claims, that because plaintiffs prayed interest only from December 19, 1921, the court was powerless to adjudge interest for the period of the trust prior to such date.

Ordinarily the point would be well taken, the general rule undoubtedly being that where the petition claims interest from a certain date, it is error to allow a recovery of interest from an earlier date. [Turnbull v. Watkins, 2 Mo. App. 235.] This, however, is a suit in

equity; and while the powers of a court of equity in the matter of giving relief are indeed limited to the cause of action and issues made by the pleadings (Branner v. Klaber, 330 Mo. 306, 49 S. W. (2d) 169), it is nevertheless true that if sufficient facts are stated to entitle the plaintiff to relief, the conclusions of law he may draw from them, and the particular relief he may ask, may, if necessary, be disregarded, and any relief be granted which is consistent with the case made by plaintiff and embraced within the issues. [Sharkey v. McDermott, 91 Mo. 647, 4 S. W. 107; 21 C. J. 678; Sec. 1080, R. S. 1929 (Mo. St. Ann., sec. 1080, p. 1378).] Particularly is this the situation where, as here, there is also a prayer for general relief which may be regarded as serving "to aid and supplement the special prayer by expanding the special relief sought, so as to authorize further relief of the same nature." [21 C. J. 681.]

Plaintiffs' cause of action pleaded and proved entitled them to the full amount of interest awarded; and under the prayer for general relief the court was not limited to the date fixed by the special prayer from and after which interest should be computed. This claim of error is consequently ruled against defendant.

Other points raised, and not specifically discussed herein, have nevertheless been examined, and found to be without merit.

The judgment rendered by the circuit court should be affirmed; and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Becker* and *McCullen, JJ.,* concur; *Hostetter, P. J.,* not sitting.