BUREN v. BUREN *et al., Appellants.*

1.  **Statute of Limitations :** ENTRY OF PUBLIC LANDS: RESULTING TRUSTS. The statute of limitations does not begin to run against a suit to enforce a resulting trust growing out of an entry of public lands with money of the plaintiff, until the patent has issued: the burden of proving the date of this rests upon the defendant.

2.  **Resulting Trusts, Growing out of a Violation of the Statute.** A son was entrusted by his mother with money of hers to enter land under the Graduation Act of congress in her name. Instead of doing so, without her knowledge, he entered it in his own name, but intending it for her use. The act prohibits entries in the name of one for the use of another. *Held,* that although this entry was made in violation of the act, the mother, being no party to the wrong, could assert a resulting trust in her favor against the heir of the son.

*Appeal from Daviess Circuit Court.*—HON. S. A. RICHARDSON, Judge.

AFFIRMED.

This suit was brought by Cosby Buren in October, 1865, against the defendants Eliza Buren and Mary Berry to divest title out of defendants and vest it in plaintiff, and a judgment was rendered for plaintiff in 1866. In February, 1880, this judgment was set aside on motion of defendant Eliza, for the reason that prior to the institution of the suit she had intermarried with and was then the wife of another Buren. When that judgment was set aside the plaintiff Cosby and her grantee, Ward, joined in an amended petition, and upon this the case was tried.

*Shanklin, Low & McDougal* for appellants.

*Rush & Ewing* for respondents.

EWING, C.—This was a petition in the nature of a bill in equity to divest the defendants of the title to certain land and vest it in the plaintiff Ward.

The petition states substantially :  That on and prior

to January 1st, 1855, the plaintiff Cosby Buren was the widow of —————— Buren, deceased, and was on the 29th day of May, 1855, occupying with her children the mansion house of her husband, and the plantation thereto belonging, no dower having been assigned to her out of his lands; that prior to the 29th day of May, 1855, she was desirous of entering, under the Graduation Act of the congress of the United States of America, approved August 4th, 1854, the land now in controversy for her own use and for the purpose of actual settlement and cultivation; that she then started with her son, James P. Buren, now deceased, to the United States land Office at Plattsburg, for the purpose of entering this land; that she became sick *en route* and was not able to go to the land office herself, but sent her said son on with an affidavit prepared under section 3 of the act mentioned, and with sufficient of her money to enter the land in her name, ($60) and pay all his expenses, and directed him to ·enter it in her name; that her ·said son went on to the land office, where the register in charge ruled that the affidavit sent was insufficient; and that the son then entered the land in his own name, with the money of his mother, intending to convey the same to her, and that thereafter the patent for said land was issued to said James P. Buren; that said James never claimed to own the land, and paid no taxes thereon, but that she paid all taxes, and in 1856 put a part of the land in cultivation; that the son James died April 30th, 1861, leaving the defendant Eliza, as his widow, and Mary C. Berry as his sole heir at law; that on December 23rd, 1873, said Cosby Buren sold and conveyed the land by warranty deed to the plaintiff Ward. Wherefore plaintiff says that James P. Buren held the title to the land last aforesaid in trust for said Cosby Buren, and prays that the title thereto be divested out of the defendants Mary C. Berry and Eliza P. Buren, and vested in James F. Ward.

The answer is a general denial, with the specific admissions : (1) That said James P. Buren died April 30th, 1861,

leaving the defendant Eliza as his widow, the defendant Mary as his sole heir at law, and they have since intermarried with the other defendants. (2) That said James P. Buren, on the 29th day of May, 1855, entered the land in controversy; but denies that it was entered for or with the money or means of his said mother, and avers that the same was entered under the act of congress, commonly known as the "Graduation Act," paid for with his own money, and that he died seized in fee of said land. (3) That said Cosby, on December 23rd, 1873, attempted to sell and convey said land to said Ward. The answer then alleges that Ward purchased with full knowledge of the condition of the title, and knew that the same was in defendant Mary as the sole heir at law of the said James. The answer then states: That the alleged cause of action stated in plaintiff's said amended petition did not accrue within ten years next before the commencement of plaintiff Cosby Buren's original action herein; wherefore these defendants plead the lapse of time mentioned in bar of plaintiff's action herein.

The reply is simply a general denial of the new matter set up in the answer.

Upon the trial defendants objected to the introduction of any testimony under the petition in this cause, for the reasons, 1st, That the petition does not state facts sufficient to constitute a cause of action; 2nd, That the petition shows upon its face that the action is barred by the statute of limitation, and 3rd, That the petition shows upon its face that the land in question was entered by James P. Buren, under the Graduation Law of the congress of the United States, under the provisions of which he could not make an entry in his own name intending that it should accrue to the benefit of another, but could only make the entry for actual settlement and cultivation or for use of an adjoining farm. Which objections were overruled and defendants duly excepted.

Plaintiff's evidence, so admitted against the objection

of defendants' counsel, tended to prove : That on the 29th day of May, 1855, said James P. Buren entered the land in controversy in his own name, and that a patent was thereafter issued to him therefor ; that he entered the said land with the money of his said mother, Cosby Buren; that after said entry said James often declared that he had entered said land for the benefit of his said mother, and that he would convey the same to her; that at the time said land was entered said Cosby lived upon and occupied an adjoining farm, which had belonged to her late husband, and that the fencing of the home place extended on to the the land in controversy so as to include five or six acres in her inclosure ; that in 1856 or 1857 they inclosed and there after cultivated eighteen to twenty-five acres more on the north side of the west forty of the tract in controversy and that in 1865 the plaintiff Ward, who then owned ad joining lands, arranged his fences so as to inclose the entire tract; that her equitable title and possession were acquiesced in and not disputed by said James in his lifetime; that she paid all taxes on the land until she sold to Ward ; that Ward purchased with full knowledge of the condition of the title, and has since his purchase been in actual possession of the land.

The plaintiff having rested, the defendants put in evidence the original petition in the cause showing that this action was commenced by filing the petition and suing out a summons on the — day of October, 1865. Defendants offered no other evidence.

There was a finding and judgment for plaintiff, when defendants bring the case here by appeal.

It is insisted by the appellants: (1) That James Buren was the trustee of a resulting trust, and that his mother, Cosby Buren, might have maintained her action to enforce that trust, had she commenced in time; but that she did not commence in time and her action is, therefore, barred by the statute of limitations ; that the cause of action accrued on May 29th, 1855, the day on which James Buren

entered the land; whereas the petition of Cosby Buren was filed in October, 1865, more than ten years after entry. (2) That under a proper construction of the act of congress under which the land was entered, no trust could have resulted to the mother, and that her suit, even had it been commenced in time, could not have been maintained in a court of equity.

The learned counsel for the appellants have exhausted the subject of express and implied or resulting trusts, and

1. STATUTE OF LIMITATIONS · entry of public lands. resulting trusts. the applicability of the statute of limitations to actions brought to enforce such trusts; and have demonstrated to my mind that the statute does apply to all such cases where the facts justify it. "In express technical trusts, the statute of limitations does not begin to run until the trust is denied by the trustee; but the *cestui que trust*, in case of such denial, is limited to the period allowed for the recovery of legal estates at law." *Smith v. Ricords*, 52 Mo. 581; *Ricords v. Watkins*, 56 Mo. 553, and authorities there cited. In implied trusts, the statute of limitations begins to run as soon as the facts are brought to the knowledge of the *cestui que trust*, so that he can take steps to enforce the trust. There is no doubt about this being the settled law; and if the cause of action accrued on the 29th day of May, 1855, and the petition was not filed until October, 1865, of course the statute runs and the suit is barred. But it has been repeatedly held by this court, under the authority of the Supreme Court of the United States, that in actions of ejectment the statute of limitations does not begin to run till the patent issues. *Gibson v. Chouteau*, 13 Wall. 93; *s. c.*, 50 Mo. 85. And if so in ejectment suits, then by authority of *Rogers v. Brown*, 61 Mo. 187, it must also apply to all civil actions, whether they are such as have been heretofore denominated suits in equity or actions at law. The evidence does not show when the patent issued, but until it did issue the statute could not begin to run. The defendants relied on the statute, and it was hence their duty to bring the case

within it by evidence; and having failed to do so, the presumption must be against them.

As to the second question : The act of congress under which both petition and answer allege that the entry in question was made, is entitled "An act to graduate and reduce the price of public lands, to actual settlers and cultivators," and was approved August 4th, 1854. Statutes at Large 1854, p. 574. The 3rd section, which provides how and by whom lands may be entered under this act, is as follows : " Section 3. Any person applying to enter any of the aforesaid lands shall be required to make affidavit before the register or receiver of the proper land office, that he or she enters the same for his or her own use, and for the purpose of actual settlement and cultivation, or for the use of an adjoining farm or plantation owned or occupied by him or herself, and together with said entry, he or she has not acquired from the United States, under the provisions of this act, more than 320 acres, according to the established surveys ; and if any person or persons taking such oath or affidavit shall swear falsely in the premises, he or she shall be subject to all the pains and penalties of perjury."

*2. RESULTING TRUSTS GROWING OUT OF A VIOLATION OF THE STATUTE.*

The appellants, to maintain their position on this point, refer to *Miller v. Davis,* 50 Mo. 572 ; *Higgins v. Higgins,* 55 Mo. 346, and *Ex parte Yallop,* 15 Ves. Jr. 67. The facts in the case of *Miller v. Davis* show substantially that the defendant's father, under the laws of congress, had entered all the land he was entitled to enter, and, not being able to enter the forty in dispute in his own name, made the entry in the name of his infant son, the defendant, and asked a decree for the title in the infant to be divested, and vested in himself. The court held in that case that " it is a well settled principle of equity jurisprudence that in general when one person pays the purchase money for land and the title is conveyed to another, a trust results in favor of the party who paid for the land. But where such purchase is made in fraud of an existing statute and in evasion of its

express provisions no trust can result in favor of the party who is guilty of the fraud." In such case "a court of equity cannot disturb the title." This is undoubtedly a correct principle. But, in the case at bar, if a fraud was committed, it was not the party complaining, but the ancestor of the parties defendant. So in the case of *Higgins v. Higgins*, the father entered land in the name of his minor son, (which by law he could not enter in his own name,) "in fraud of an existing statute and in evasion of its express provisions." And the court very properly held "no trust can result in his favor; and a court of equity will not interfere to help him out of the difficulty in which he has placed himself in violation of law." Why? Simply because he was the party guilty of the fraud. In the case at bar, "the party committing the fraud" cannot invoke this rule against an innocent party whose money he has used for his own benefit.

The judgment of the circuit court is affirmed. PHILIPS, C., concurs; MARTIN, C., absent.