THE ATLANTIC NATIONAL BANK OF JACKSONVILLE, FLORIDA, a Corporation, Executor Under the Last Will and Testament of S. HOXIE CLARK, Deceased, and MARY CLARK LIND and ELIZABETH CLARK GURGANIOUS, Also Known as ANNIE CLARK GURGANIOUS, Beneficiaries Under a Certain Declaration of Trust, v. ST. LOUIS UNION TRUST COMPANY and ROY MCKITTRICK (J. E. Taylor), Attorney General of the State of Missouri, Appellants.—No. 40444.—211 S. W. (2d) 2.

Division One, April 12, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, May 10, 1948.

*Fordyce, White, Mayne, Williams & Hartman, Frank E. Williams* and *Joseph Renard* for appellant St. Louis Union Trust Company.

772

*Boyle, Priest & Elliott, Howard Elliott* and *Aubrey B. Hamilton* for respondents; *Chamberlain, Clark, Buchner & Willi, Thomas G. Chamberlain, Edward J. Willi* and *Cecil L. Head* of counsel.

774

■ CONKLING, J.—This is an equitable action, filed in 1944, which prayed the construction and determination of the effect of a written instrument captioned "Indenture of Trust" (hereinafter called the indenture) executed by Silas H. H. Clark (hereinafter called Clark) in which indenture Clark made his only child, a son, Snyder Hoxie Clark (hereinafter called Snyder), and the St. Louis Union Trust Company (hereinafter called defendant) trustees of a purported trust.

The circuit court decreed that the indenture created a valid trust, ordered defendant to hold the property free from claims by plaintiffs and to execute the purported trust under the indenture. The separate motions for new trial of the plaintiffs were filed and thereafter sustained. Defendants appealed.

The indenture contained reservations to Clark, as infra quoted, and provided for, (1) payment to certain persons after Clark's death of ten cash gifts or bequests, totaling $83,500, (2) payment of the income to his wife and Snyder, and then to the survivor of them, with one-half of the principal absolutely to Snyder's children in certain contingencies, (3) payment of certain portions of the income to Clark's brother and sister-in-law (both since deceased) in certain contingencies, and (4) use of certain sums to establish a home for aged and infirm railroad employees, under certain named conditions. The answers of the defendants joined in the prayer of the petition praying construction.

The indenture was executed and accepted in writing by the trustees on November 9, 1898. Between that date and his death in June, 1900, Clark had many thousands of dollars in active accounts in many banks. He made many large deposits in and withdrawals from said accounts, traded quite actively in securities and paid in full for many stocks he had not theretofore owned. Clark retained possession and control of his stocks, bonds, moneys, other evidences of indebtedness and personal properties, during his lifetime, and used the same as he desired. The record before us does not show any delivery to either of the trustees, either at the time of the execution of the indenture, or during Clark's lifetime, of any personal property, stocks, bonds or anything of value whatever. Clark died intestate in June, 1900, survived by his widow, who died in 1914, and by Snyder, who died in 1944. Snyder was survived only by the two individual plaintiffs. There was no administration on Clark's estate. The assets of his estate consisted solely of stocks, bonds, money and choses in action, now valued in excess of $1,000,000. Clark had no real estate.

Mary Clark Lind and Elizabeth Clark Gurganious (hereinafter called the individual plaintiffs) are the legally adopted children of Snyder. The trustees began the administration of Clark's purported trust immediately after his death and continued to administer it until

the death of Snyder in 1944. Defendant has since continued as sole trustee. The Atlantic National Bank of Jacksonville, Florida (hereinafter called plaintiff bank) is the executor of Snyder's estate.

In its preliminary paragraphs the indenture provided that "I . . . have given, granted, assigned, set over and conveyed, and do hereby give, grant, assign, set over and convey", to the trustees, "all and singular my goods, chattels, effects, and choses in action whatsoever and wheresoever situate and of what nature and kind soever . . . to have and to hold, said goods, chattels, effects and choses in action hereby granted, bargained, sold, assigned, set over and conveyed, and every part and parcel and increment thereof, and such as may be during my life obtained in exchange, lieu or stead thereof" unto the trustees, "provided, always, and these presents are upon the following special trusts, confidence and express conditions, namely: . . . . That I, the said S. H. H. Clark, shall be permitted to use, occupy and enjoy all and singular said goods, chattels, effects and choses in action, and every part and parcel thereof, as well as any and all increment arising therefrom, during my natural life, without paying anything for the same or in respect thereof; and that during my life, I may alter, amend or revoke this conveyance by an express declaration in writing referring hereto".

The indenture further provided that, "from and after my decease, this conveyance remaining unaltered or unrevoked", the named trustees "shall forthwith take, hold, manage and control" Clark's assets, make payment of the ten specified gifts or bequests and administer the purported trust as therein provided. All that was accordingly done. After Clark's death the trustees collected and took physical possession of all of Clark's property, paid his funeral expenses, the expenses of his last illness, his premortuary debts, and the ten special gifts or bequests, and proceeded generally as though they were executors and trustees under a trust created by will.

The plaintiff bank contends, (1) that the indenture was absolutely void for all purposes, and created no trust whatever because it conveyed neither legal or equitable title to Clark's property in praesenti, (2) that there was no delivery of the property nor any possession thereof by the trustees until after Clark's death, (3) that since the indenture was not executed in accordance with the statute of wills it was at most a mere abortive and ineffectual testamentary disposition, (4) that the indenture being void, attack thereon by plaintiffs is not barred by estoppel, nor by limitation, and (5) that at Clark's death his property descended to his heirs and the present corpus should now be awarded to plaintiff bank as Snyder's executor. The individual plaintiffs likewise contend the indenture is void.

The defendant contends, (1) the indenture created a valid express trust inter vivos, (2) that because Snyder accepted and executed the

purported trust for 44 years, his executor is estopped to attack its validity, and the claim of plaintiff bank is barred by limitations.

Other points are raised and argued in the briefs but in the view we take of the case it is unnecessary to either state or discuss them.

As conceded by all the parties, the indenture cannot be held valid as a will, it not having been executed in accordance with the statute of wills. Nor can the indenture be given any effect as a mere deed inter vivos. It is unquestionably testamentary in character, was intended to be operative only in futuro and there was no delivery of the subject matter. Professor Scott, in 43 Harvard Law Review, 521, 522, in his discussion of "Trusts and the Statute of Wills", states: "If the owner of securities or other personal property intends to make a gift of them but the gift is incomplete for lack of delivery, the donee takes nothing; and if the gift was intended to be upon trust for a third person, no trust arises". See also, In re Franz Estate, 344 Mo. 510, 127 S. W. (2d) 401, Allen-West Commission Co. v. Grumbles, 129 Fed. 287, 290.

To establish a valid express trust inter vivos there must be (1) a beneficiary, (2) a trustee, (3) a trust res so sufficiently described or capable of identification that title thereto can pass to the trustee, (4) actual delivery of the corpus, its character considered, or a legal assignment of the same to the trustee actually conveying present title to the trustee; or the retention of title by the owner under circumstances which unequivocally disclose an intent to hold it for the use of another. In re Estate of Soulard, 141 Mo. 642, 43 S. W. 617; Harris Banking Co. v. Miller, 190 Mo. 640, 89 S. W. 629, Northrip v. Burge, 255 Mo. 641, 164 S. W. 584, State ex rel. Kansas City Theological Seminary v. Ellison, (Mo.) 216 S. W. 967, Brannock v. Magoon, 141 Mo. App. 316, 125 S. W. 535, Van Studdiford v. Randolph, (Mo. App.) 49 S. W. (2d) 250; Eschen v. Steers, 10 Fed. (2d) 739, (8th Circ.), Harding v. St. Louis Union Trust Co., 276 Mo. 136, 207 S. W. 68, Vol 1 Bogerts Trusts & Trustees, secs. 103, 104; 1 Restatement of the Law of Trusts, sec. 57; 54 Am. Juris. secs. 33, 34; 65 C. J. 231.

But whether a completed express trust is sought to be established by parol or by a written instrument, the evidence relied upon to establish it must be clear and convincing and so full and demonstrative as to remove from the mind of the chancellor any reasonable doubt with respect thereto. Harding v. St. Louis Union [6] Trust Co., supra, Northrip v. Burge, supra, Eschen v. Steers, supra, United States v. Certain Land, etc., 70 Fed. Supp. 730.

While here there was no delivery to the trustees, during Clark's lifetime, of possession of any of Clark's property, defendant contends that notwithstanding there was no physical delivery the indenture itself so sufficiently transferred present title as to satisfy the demands of the law. This calls for examination and analysis of the indenture.

In the indenture, after purporting to "give, grant, assign, set over and convey . . . all and singular my goods, chattels, effects and choses in action" to the trustees, "to have and to hold said goods," etc., ". . . and every part and parcel and increment thereof, and such as may be during my life obtained in exchange, lieu or stead thereof", Clark immediately thereafter limited such purported conveyance in these words: (1) ". . . upon the following special trust, confidence, and express conditions, namely":

(a) "That I, the said Silas H. H. Clark shall be permitted to *use, occupy and enjoy* all and singular said goods, . . . and every part and parcel thereof, as well as any and all increment arising therefrom, during my natural life, without paying anything for the same or in respect thereof,

(b) "That from and after my decease, . . . the said trustees . . . *shall forthwith take, hold, manage and control* the goods, chattels and effects, and every part and parcel thereof, as well as any increment thereof". (Emphasis ours.)

The context clearly indicates that Clark had some particular purpose in his expressed limitation in reserving to himself the right to "use, occupy and enjoy" his property. Those are words of legal significance. The verb "use" is defined by Webster as "to convert to one's service", or "to avail oneself of" or "to put into operation" or "to cause to function". In Ex parte Smith, 212 Ala. 262, 102 So. 122, 125, "use" is said to mean, "to employ for any purpose". In Kennedy v. Pittsburg & L. E. R. Co., 216 Pa. St. Rep. 575, 65 Atl. 1102, as to the meaning and scope of the verb "use", respecting both real and personal property, it is said: "The power to use the principal means the power to consume, and the power to consume real estate necessarily includes the power to convey". The Century Dictionary defines the verb "to use" as meaning "to consume or expend". The reserved dominion, as in the instant instrument, and under the instant circumstances, to use securities, money, personalty and choses in action, of necessity includes the right to employ it, invest it, expend and alienate it as desired. The employment of the verb "use", when not modified by words restricting such use to a particular purpose, includes its use in any form or in any manner. Mitchell v. Board of Curators of Morrisville College, 305 Mo. 466, 266 S. W. 481.

Personalty can be "occupied" only by possessing it, by holding it, by keeping it in physical possession.

Personalty can be enjoyed only in its use. To "enjoy" personalty, the free, unrestricted and unlimited use of it must be made. In no other way can personalty be enjoyed. There must be the unrestricted right to hold, alienate, transfer, trade, trade in and reinvest it, before it can be enjoyed. Board of Trustees of Westminister College v. Dimmitt, 113 Mo. App. 41, 87 S. W. 536 was an action to

establish a trust in monies. The testator gave his estate, both personal and real property, to his widow "to hold, possess and enjoy during her natural life", with a direction that at the death of the widow the estate be converted into money and paid to the college. The College claimed under the husband's will after the death of the widow. In ruling the last above quoted words gave the husband's entire estate to the widow and that no trust was created the Court said: "In Rountree v. Dixon, 105 N. C. 350, 11 S. E. 158, it was held that the term 'enjoy,' as used in a will providing that the testator's wife 'shall hold, use, occupy and enjoy' his entire estate, both real and personal, as he had done before, and to care for his children in the same way during her natural life, means she is to have the benefit of it and use it as her husband had in his lifetime in caring for herself and children. One of the definitions [7] of the term 'enjoy' given by Webster is 'To have, possess, and use with satisfaction; to occupy or have the benefit of.' It seems to us that Mrs. Bowles, under the first clause of the will, had the right to apply the $611.39 received from her husband's estate in any way that would contribute to her well being, that the fund was hers to expend for her personal benefit, if she chose to do so". (Paragraphing ours.)

█ Likewise, the words of limitation used in (b), above, are highly significant and indicative of intention to pass no title in praesenti. Clark stated that "from and after my death" (i. e., forward from Clark's death, but not before), the trustees, "shall forthwith take, hold, manage and control" his property. In those words there is indicated every intention of Clark to withhold the passing of both title and possession until after his death. "Forth" is defined by Webster as "forward, onward in time". "Forthwith" is there defined as "within a reasonable time". Forthwith means thereafter, and within a reasonable time thereafter. In Empire Properties Corporation v. Manufacturers Trust Co., 28 N. Y. Supp. (2d) 376, 379, 380, wherein the provisions of a trust indenture required the "forthwith" cancellation of certain bonds under certain circumstances, the Court said: "The word 'forthwith' connotes a present or an immediately future cancellation and does not refer to bonds concededly cancelled long prior to the sale in question". Clark intended that not until his death but that from and after his death, and within a reasonable time after his death, the trustees should take both title and possession; that the trustees then, but not until then, should "take, hold, manage and control", his property. The words "take, manage and control" used in (b), supra, are not theretofore used in the indenture. "Take" is defined by Webster as, "to get possession and control of". In Whitworth v. Carter, 147 S. E. (Ga.) 904, 905, it is said: " 'To take,' in a general sense, means to get or gain possession, where it was theretofore held by another."

. By the words he used Clark intended the trustees, after his death, should *then* take title and possession of only such property as he should own at the time of his death. That Clark may have had a desire or intention that ''from and after'' his decease a trust should then come into existence is not sufficient. To have effected a valid trust, as of the time of the execution of the indenture Clark must have parted with dominion over the legal title. Odom v. Langston, 355 Mo. 115, 195 S. W. (2d) 466, Eschen v. Steers, supra. That he did not do. Likewise, as of the time of the execution of the indenture the cestuis qui trust must have acquired an enforceable equitable interest in the trust res by the terms of the indenture itself. That they did not acquire. The terms of the indenture left the entire matter executory. There having been no delivery and having specifically retained to himself the use and enjoyment, and, as owner, being entitled to its possession and beneficial enjoyment, Clark could not change himself from such an owner with all attributes of possession and dominion, to that of a trustee holding for the beneficial enjoyment of another, unless the indenture, facts and circumstances unequivocally indicate he intended to make such a change in position. No such intention is indicated.

We agree with defendant's contention that a mere reservation of power to revoke, when not followed by actual revocation, does not impair a trust or render it invalid, if title actually passed to the trustees by execution of the indenture itself. Sims v. Brown, 252 Mo. 58, 158 S. W. 624. But while the words of conveyance in the opening paragraph and in the habendum of this indenture indicate an intention, mere expression of intention unaccompanied by actual passing of title in praesenti, or transfer of possession of the corpus, falls far short of creating a voluntary express trust.

In Sims v. Brown, supra, strongly relied on by defendant, the settlor used words merely postponing the time when the trustee should take possession of the land for the purposes of the trust, but the words of the withholding limitations in the instant indenture, in (a) and (b) supra, clearly overcame the earlier language and constituted a reservation of title in Clark so long as he should live. .

[8] The above conclusion is supported by the persuasive construction which Clark and the trustees placed upon the indenture after November 9, 1898 and until Clark's death in 1900. Warne v. Sorge, 258 Mo. 162, 167 S. W. 967, 969, Harding v. St. Louis Union Trust Co., supra. Clark's complete dominion over his use and alienation as desired of his assets, while not wholly controlling, deserve consideration. In one bank account alone, in Omaha, he deposited and mingled with his general funds many smaller amounts earmarked as income on securities. The record before us shows that he withdrew quite substantial amounts of $30,000 and $6,000, plainly to purchase new securities. He deposited large amounts, $16,800

and $14,040 obviously realized from the sale of securities owned and possessed by him before November 9, 1898. After Clark's death, but not until then, his trustees proceeded generally as executors and collected his assets, paid his bills and discharged the $83,500 in specific bequests.

In addition to Sims v. Brown, supra, defendant relies on such cases as Wimpey v. Ledford, (Mo.) 177 S. W. 302, Thorp v. Daniel, 339 Mo. 763, 99 S. W. (2d) 42, Davis v. Rossi, 326 Mo. 911, 34 S. W. (2d) 8, Trautz v. Lemp, 329 Mo. 580, 46 S. W. (2d) 135, Christ v. Kuehne, 172 Mo. 118, 119, 72 S. W. 537; Owen v. Trail, 302 Mo. 292, 258 S. W. 699 and others. Each citation made by defendant has been carefully examined. The facts of those cases distinguish them.

Much emphasis is placed by defendant upon Lewis v. Curnutt, 130 Iowa 423, 106 N. W. 914, referred to in our opinion in Trautz v. Lemp, supra. The words of limitation there relied on also appear in the instant indenture. But the instant indenture contains many strong limitations not appearing in the Iowa case. In that case the settlor, simultaneously with the execution of the trust instrument, executed and delivered to the trustee a deed to the real estate there involved, thereby unequivocally conveying present title. That fully distinguishes that case. In that case the words used in the trust instrument "from and after my death and not before" merely postponed the right of the trustee to take possession, but did not affect the transfer of title which passed by deed.

We hold that the instant indenture by its execution conveyed neither the legal nor equitable title to Clark's property. There is certainly no retention of title in Clark as trustee in this indenture. After its execution Clark's title to and dominion over his property was still absolute. The indenture therefore created no trust whatever, and was utterly void ab initio.

It is contended by defendant, however, that the plaintiff bank is estopped to challenge the validity of the indenture. This contention is asserted upon the theory that Snyder accepted the purported trust, that, with defendant, Snyder thereafter executed it, that he accepted certain benefits therefrom and that his executor is thereby estopped to take the position that it was always void. Defendant cites cases of estoppel by deed and quasi-estoppel holding that one cannot claim under a will, or other instrument, and at the same time claim against it. We have carefully examined them all. The situation here is unlike that presented in any case cited by defendant. Most of those cases are not apposite because the instrument there concerned was presumptively valid. They were voidable only and not inherently void.

Defendant alone, at most only a trustee with no personal claim to Clark's property, urges upon us, in effect, that the acceptance of such benefits by Snyder (who would have been legally entitled to them

whether the indenture were valid or invalid) gave vitality to a wholly void instrument, and that such acceptance can by it be invoked as an estoppel against plaintiffs' present assertion of the invalidity of the indenture. But we are not persuaded to that view.

The instant indenture, being absolutely void, is as though it never existed. Being void ab initio neither action (acceptance by Snyder of the purported trust and acceptance of benefits) nor inaction (failure by Snyder to assert its invalidity) could breathe life into it and make valid an instrument void from its very inception. Estoppel in pais is applicable to a right or a title which is voidable, or one which is defeasible, and usually has no application at all to a purported right wholly void from its inception and which actually never existed. [9] Miller v. Bowen Coal & Mining Company, (Mo. App.) 40 S. W. (2d) 485, Niccolls v. Niccolls, 168 Cal. 444, 143 Pac. 712, 31 C. J. S. Estoppel, sec. 150.

In the record before us there is no proof that Snyder accepted any benefit with knowledge that the indenture was void (it may here be observed that because of such invalidity, he was entitled to take by inheritance in any event); or that defendant was without knowledge of the facts upon which its claim of estoppel is based; or that defendant relied on Snyder's acceptance of benefits and changed its position to its injury. Acceptance of benefits cannot therefore operate as an estoppel. Petrie v. Reynolds, (Mo.) 219 S. W. 934; 31 C. J. S. Estoppel, sec. 109, pages 349, 350. The rule for which defendant contends has no application where no injury resulted to any one except the party against whom the estoppel is claimed, and here Snyder was entitled to the benefits in any event. Burke v. Murphy, 275 Mo. 397, 205 S. W. 32, Cook v. Ball, 144 Fed. (2d) 423, 31 C. J. S. Estoppel, sec. 109, p. 350.

It is the mandate of the law that to create an express trust inter vivos the instrument in question transfer present title. This indenture violated that mandate. The doctrine of estoppel by acceptance or ratification of an instrument does not apply at all to an instrument void for violation of a mandate of the law and no conduct can be invoked as an estoppel against asserting its invalidity. Miller v. Bowen Coal & Mining Co., supra, Mary A. Colby v. Title Insurance & Trust Co., 160 Cal. 632, 117 Pac. 913, 35 L. R. A. (N. S.) 813. Estoppel by conduct applies to such conduct as precludes one from prosecuting a meritorious action or making a true defense as against one who in reliance upon such conduct has changed his position. Defendant has not changed its position at all. Under the situation here presented there can be no estoppel to assert that the indenture was void ab initio.

It is further contended by defendant that, even though the indenture failed as a transfer of title in praesenti and that therefore the purported express trust failed, it nevertheless holds Clark's prop-

erty upon a resulting trust for the benefit of Clark's heirs; and that because of the statute of limitations Snyder's executor is barred from asserting that the indenture was always void.

Judicial construction of this indenture is here being sought for the first time. Defendants by their separate answers join in the plaintiffs' prayer for construction. The situation is as though the defendant trustee were plaintiff in this action and prayed construction and guidance. All possible interested parties are now in court asking construction and under the circumstances presented by this record there can be no bar by mere lapse of time. 2 Perry on Trusts and Trustees, sec. 863. Defendant's possession of the trust res has not been adverse, "but only as trustee, for better or worse, whatever the (indenture) means and whatever may be its legal effect". St. Louis Union Trust Company v. Kelley, 355 Mo. 924, 199 S. W. (2d) 344, 353.

The part defendant plays in this.purported trust picture should be kept in mind. It does not claim Clark's property as beneficiary, but, asserting the validity of a purported indenture to create a trust says it is trustee, and, as such, is entitled to continue to administer this property as a trustee, and no more. But, in any event, the statute of limitations would not run in favor of a mere trustee of a trust, and against the beneficiaries. Elliott v. Landis Machinery Company, 236 Mo. 546, 139 S. W. 356, Priest v. Capitain, (Mo.) 197 S. W. 83, St. Louis Union Trust Company v. Hunt, (Mo. App.) 169 S. W. (2d) 433, 2 Wood on Limitations, sec. 200, 2 Perry on Trusts and Trustees, sec. 863, p. 1468.

It has repeatedly been held that as to express trusts the statute of limitations never begins to run in favor of a trustee until and unless there has been a repudiation of the trust by the trustee, and the trustee by such repudiation serves notice on the beneficiaries that it is personally claiming the trust res adversely. Koppel v. Rowland, 319 Mo. 602, 4 S. W. (2d) 816, Buren v. Buren, 79 Mo. 538, Ricords v. Watkins, 56 Mo. 553, Smith v. Ricords, 52 Mo. 581, St. Louis Union Trust Company v. Hunt, supra, Cunningham v. Kinnerk, 230 Mo. App. 749, 74 S. W. (2d) 1107, 2 Perry on Trusts and Trustees, sec. 863. Here there [10] has been no repudiation by defendant trustee of the purported trust. It here and now vigorously asserts the validity of the trust, and that it is the trustee. We hold that no lapse of time or statute of limitations barred plaintiffs from asserting in this action that the purported indenture was void.

The indenture, being void, no express trust was created. No express trust having been created, no express trust could thereafter fail. No express trust having failed, there is no resulting trust with defendant as trustee for the present beneficiaries.

All evidence possibly material to any question respecting this purported trust is in the record now before us. However, in view

of the fact that in this case the trial court sustained the plaintiffs' separate motions for new trial we are now confronted with the question of our disposition here of this case.

It is provided by the statute, Mo. R. S. A. sec. 847.140, subsection (c), that under these circumstances we shall "give such judgment as such court ought to have given, as to the appellate court shall seem agreeable to law. Unless justice requires otherwise the court shall dispose finally of the case on appeal and no new trial shall be ordered as to issues in which no error appears." The just last quoted sentence was first written into law in our Civil Code of 1943 which became effective in 1945.

The St. Louis Court of Appeals in Blanford v. St. Louis Public Service Co., 199 S. W. (2d) 887, recently held that where the trial court granted "an entire new trial" Sec. 847.140 does not apply, but applies only "in cases where no new trial has been ordered by the trial court." We cannot agree with that ruling. In the respect just noted the Blanford case should not be followed. We hold that under these circumstances Sec. 847.140 above quoted, authorizes and the ends of justice require a final disposition of this case upon this appeal. See Hansen v. O'Malley, 356 Mo. 908, 204 S. W. (2d) 281 and State ex rel. Harwood v. Sartorius, 355 Mo. 837, 198 S. W. (2d) 690.

All interested parties are now in court and have been heard, all join in praying construction, all material evidence has been considered and the rights of all parties are herein ruled. No useful purpose can be served by a retrial. The indenture being void in law, there is nothing left in the case to retry. We proceed to dispose of this case here.

In view of what we have said above we hold that the plaintiff bank, Snyder's executor, in its representative capacity, as such executor, is now entitled to receive from defendant, for the benefit of Snyder's estate, all of the corpus of Clark's purported trust estate now held by defendant, subject, of course, to the payment therefrom, upon order of the circuit court, of any proper costs, fees or allowances.

The order of the circuit court sustaining the separate motions of plaintiffs for new trial is therefore sustained but the cause is remanded to the circuit court for the express purpose of the entry of a decree in conformity with this opinion. It is so ordered. All concur.