

## Missouri Court of Appeals
### Southern District
### Division One

| | | |
|---|---|---|
| ROBERT WATTS and MARY WATTS, | ) | |
| | ) | |
| Plaintiffs-Respondents, | ) | |
| | ) | |
| vs. | ) | No. SD35642 |
| | ) | |
| EFCO CORPORATION, | ) | Filed June 10, 2019 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| LIBERTY MUTUAL INSURANCE CO., | ) | |
| | ) | |
| Intervenor-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Jack A.L. Goodman

AFFIRMED

Liberty Mutual Insurance Company ("Liberty Mutual") appeals the trial court's summary judgment in favor of Robert and Mary Watts (individually referred to by their first names, collectively referred to as "the Watts") on competing petitions to declare, under section 287.150.3,[1] the reimbursement amount for a workers' compensation subrogation lien. Liberty Mutual contends in two points that the trial court erroneously relied on its post-settlement comparative fault determination in calculating the reimbursement amount due Liberty.

---

[1] All statutory references are to RSMo Cum.Supp. 2014.

Determining that Liberty Mutual's first point takes issue with error that, if it exists, was invited by Liberty Mutual and that its second point lacks any merit, we affirm.

## Standard of Review

> When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.
>
> Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (internal citations omitted).

## Factual and Procedural Background

The underlying material facts are not in dispute.[2] Robert Watts was involved in an accident during the course and scope of his employment with R&R Trucking, Inc. ("R&R"), when he fell while attempting to tarp a flatbed trailer pre-loaded by EFCO Corporation ("EFCO"). Liberty Mutual, which provided workers' compensation insurance to R&R, paid Robert, subject to a subrogation lien, $248,822.53 in workers' compensation benefits.

The Watts filed this action against EFCO for damages, alleging claims of negligence and loss of consortium. EFCO asserted the affirmative defense, among others, "that injuries and damages, if any that [the Watts] sustained on the occasion alleged were directly caused or

---

[2] In its response to the Watts' statement of uncontroverted material facts, Liberty makes several denials but fails to support any denial with "specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). These responses do not comply with Rule 74.04(c)(2) and, therefore, all of the factual allegations in the Watts' statement of uncontroverted material facts are deemed admitted and treated as true. *See id.* All rule references are to Missouri Court Rules (2018).

directly contributed to be caused by the negligence or fault of [Robert]." Thereafter, the Watts, EFCO, and Liberty Mutual, which was also EFCO's liability insurer, reached an agreement on the resolution of the issues in this action ("the agreement"). The agreement provided, *inter alia*, that EFCO and Liberty Mutual would pay Robert $550,000 and that "the parties shall seek a determination from the Circuit Court of Barry County, Missouri, as to the percentage of [the Watts'] fault with respect to causing the injuries they claim to have sustained, such that the Court shall determine comparative fault on behalf of [the Watts]." In accordance with the latter provision, the Watts and EFCO thereafter presented to the trial court, at a hearing, a joint stipulation of facts and arguments on the issue of fault. After that hearing, the trial court entered an order finding that Robert was eighty percent at fault for his injuries and EFCO was twenty percent at fault ("the comparative fault order").

After the trial court's entry of the comparative fault order, Liberty Mutual issued Robert a settlement check that withheld $136,308.08, which EFCO later interpleaded into the registry of the trial court as a result of Robert's and Liberty Mutual's competing claims thereto related to the amount of Liberty Mutual's workers' compensation subrogation lien. Liberty Mutual then intervened in the underlying action and filed a petition seeking a declaration that the trial court's comparative fault determination "has no bearing" on Liberty Mutual's workers' compensation lien reimbursement and that Liberty Mutual is entitled to the entire sum of money held by the trial court. Robert disputed that Liberty Mutual was entitled to that amount and filed a counter petition asserting that the trial court's comparative fault determination set Liberty Mutual's reimbursement entitlement at $27,261.34.

Cross-motions for summary judgment followed. In ruling against Liberty Mutual, the trial court concluded, in part, as follows:

At the time this court entered its order apportioning fault, it was not aware of the sum for which the parties settled their claims, nor was it aware that the settlement amount due [Robert] for personal injury would not be reduced from the agreed upon total of said damages by the percentage of fault apportioned to him. This court made its finding apportioning comparative fault to [Robert], as was required to finalize the settlement between [the Watts] and [EFCO]. Even if this court did set that finding aside as a nullity, Kerperien[3] dictates that use of the formula advocated by [Robert] would still be required to calculate the subrogation amount due [Liberty Mutual] because the apportionment of comparative fault by a trier of fact did occur.

The trial court ultimately granted the Watts' motion for summary judgment, denied Liberty's motion, and entered judgment ordering "that the sum due [Liberty Mutual] from the settlement proceeds interplead [sic] into this court is $27,261.34." Liberty Mutual timely appeals.[4]

## Discussion

### Point 1 – Trial Court had Subject-Matter Jurisdiction and any Error Related to its Comparative Fault Determination was Invited by Liberty Mutual

In its first point, Liberty Mutual contends:

The trial court erred in granting [the Watts]' motion for summary judgment because it lacked jurisdiction, and improperly relied upon a null and void advisory opinion in that the assessment of comparative fault by the trial court occurred after the Plaintiffs[, the Watts,] entered into a settlement agreement extinguishing Defendant EFCO's liability and they were no longer adversaries.

Liberty Mutual does not claim that the trial court lacked subject-matter jurisdiction to consider the Watts' negligence action against EFCO, the competing petitions for declaratory judgment, filed first by Liberty Mutual and then by the Watts, or to grant summary judgment in the Watts' favor. Rather, Liberty Mutual takes the position, as further elaborated by its argument, that the trial court lacked subject-matter jurisdiction when, before Liberty Mutual's intervention in the case, the trial court heard the issue of Robert's and EFCO's comparative fault

---

[3] *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778 (Mo. banc 2003).
[4] The Watts suggest that Liberty Mutual's appeal should be dismissed because its initial brief violates Rule 84.04 and because Liberty has unclean hands. While we agree that Liberty's brief is not a model for compliance with Rule 84.04, its defects do not hamper our review, which, in our discretion, we perform *ex gratia*.

and entered its comparative fault order. The trial court action that Liberty Mutual challenges as erroneous is the trial court's later reliance, in making its summary judgment determination, on the previously entered comparative fault order. Such reliance was erroneous, Liberty Mutual claims, because the comparative fault order was a "null and void advisory opinion" due to the fact that they had settled and, as a result, "were no longer adversaries."[5]

To the extent that Liberty Mutual's argument challenges the trial court's subject-matter jurisdiction to consider and enter the comparative fault order, its argument is without merit. Comparative fault was an issue raised by EFCO as an affirmative defense to the claims in the Watts' petition against it sounding in negligence. The trial court had subject-matter jurisdiction to hear and determine all issues related to the claims and defenses raised in this civil case. *See J.C.W. v. Wyciskalla*, 275 S.W.3d 249, 253–54 (Mo. banc 2009) (noting that under article V, section 14 of the Missouri Constitution, "'[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal'" (alteration in original)).[6]

To the extent that Liberty Mutual's argument can be construed, not as a jurisdictional challenge, but as a challenge to the specific trial court *procedure* employed in this case (the judicial determination of comparative fault following the parties' monetary settlement), we conclude that such alleged trial court procedural error, if any, was invited by Liberty Mutual.

---

[5] In its reply brief, Liberty Mutual further asserts that the comparative fault order "must be vacated." We do not address this claim as it is outside of the issues raised by Liberty Mutual's point relied on. *See State ex rel. Wilson v. Brown*, 897 S.W.2d 171, 173 (Mo.App. 1995) ("Our review is restricted to the issue[s] raised in the point relied on.").

[6] The primary cases cited by Liberty Mutual, *Mid-Century Ins. Co. v. Wilburn*, 422 S.W.3d 326 (Mo.App. 2013), and *Doss v. Howell-Oregon Elec. Coop., Inc.*, 158 S.W.3d 778 (Mo.App. 2005), are factually inapposite and offer no support for its claim. In *Mid-Century Ins. Co.*, we described the declaratory judgment requirement of a "justiciable controversy" as jurisdictional. 422 S.W.3d at 328. Our supreme court later clarified, however, that justiciability is a "prudential" doctrine and is not jurisdictional. *Schweich v. Nixon*, 408 S.W.3d 773 (Mo. banc 2013); *see also Rideout v. Koster*, 439 S.W.3d 772, 774 n.5 (Mo.App. 2014) (addressing *Mid-Century Ins. Co* in light of *Schweich*). In *Doss*, we noted that a trial court acts in excess of its jurisdiction when it enters a judgment against a person or entity that is not a party to the proceedings. 158 S.W.3d at 783. This principle, however, has no applicability to the facts of the instant case where no judgment was entered against a nonparty.

Liberty Mutual was a party to the agreement, which contained the provision, already quoted in this opinion, *supra*, agreeing, authorizing, and requiring the Watts and EFCO to seek a judicial determination of their comparative fault. In other words, by entering into the agreement, Liberty Mutual authorized and facilitated, either directly or indirectly, the very trial court procedure that it now claims was erroneous.

Although asserted by the Watts as an uncontroverted material fact in support of its motion for summary judgment and deemed admitted, Liberty Mutual neglected in its initial brief to address or even mention that it was a party to the agreement. It did, however, address the issue *after* the Watts raised this material fact in their responding brief. In its reply brief, Liberty Mutual argues that its liability coverage of EFCO and its workers' compensation coverage of R&R represent "two different policies of insurance at play which give rise to two separate and distinct sets of fiduciary obligations." It goes on to explain, regarding its obligations to EFCO, that

> [i]f Liberty (liability) would have objected in any way to the post-settlement comparative fault hearing, then it would have certainly set itself up for a "bad faith" lawsuit by EFCO, because technically, by objecting to the post-settlement comparative fault hearing, Liberty (liability) would have put its own financial interests ahead of its insured, EFCO.

According to Liberty Mutual, "[t]his case was a rare instance where the same insurance company provided liability insurance to the third-party defendant and workers' compensation insurance to the employer."

While we agree with Liberty Mutual that this case factually represents a "rare instance" where an insurance company straddles both sides of a dispute of this kind, we are unconvinced by Liberty Mutual's suggestion that its interest in the settlement agreement *only* went as far as satisfying its fiduciary obligation to EFCO. To the contrary, Liberty Mutual voluntarily

6

benefitted itself under the agreement in several respects, including, but not limited to, agreements from the Watts to

> forever discharge Liberty Mutual . . . of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which [the Watts] ever had, now have, or which may hereafter accrue on account of, or in any way growing out of, any and all known and unknown, foreseen and unforeseen losses, and any other damages, as well as the consequences thereof, resulting or to result from the [accident; and]
>
> ***
>
> hold . . . Liberty Mutual . . . harmless, against any suits, claims, cross-claims, judgments, costs, or expenses of any kind, including attorneys' fees, arising from the assertion of any such valid liens . . . , reimbursement rights, subrogation interests or claims.

Indeed, Liberty Mutual so enmeshed itself into the agreement that it is mentioned therein not less than twenty-five times. Yet, Liberty Mutual proffers no legal reason or basis that required it to be a party to the agreement in the first instance or, more particularly, in order to satisfy its fiduciary obligation to EFCO. Rather, Liberty Mutual, as an interloper, thrust itself into the agreement between the Watts and EFCO in order to secure, at a minimum, the release and indemnification benefits the agreement granted to it. In order to secure those benefits, Liberty Mutual agreed to a trial court procedure for a comparative fault determination. After the agreement was signed by all the parties thereto, including Liberty Mutual, the Watts and EFCO proceeded in accordance with that agreed-upon trial court procedure.[7] Liberty Mutual now alleges on appeal that it cannot be bound by the trial court's comparative fault determination because the trial court committed error in following the agreed-upon procedure for making that determination in that it did not have authority to proceed in that manner.

---

[7] Liberty raises no contention that the comparative fault order was entered as the result of the Watts' failure to follow the procedure agreed to and set forth in the agreement.

7

The general rule in circumstances such as the one presented here is that "[a] party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." *Bowers v. Bowers*, 543 S.W.3d 608, 615 (Mo. banc 2018) (internal quotation marks omitted). "It is axiomatic that a [party] may not take advantage of self-invited error or error of [its] own making." *Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 525 (Mo. banc 2017). This rule applies to the facts and circumstances of this case. Assuming without deciding that the trial court erred in considering and entering the comparative fault order, Liberty Mutual invited and therefore waived any challenge to that alleged error. Liberty Mutual's first point is denied.

### Point 2 – No Express Trust Came into Existence

In its second point, Liberty Mutual contends: "The trial court erred in granting [the Watts]' motion for summary judgment because it constitutes the breach of an express trust, in that it contravenes section 287.150, RSMo., and Missouri's public policy which preserves workers' compensation subrogation rights." Liberty Mutual, without any citation to relevant legal authority regarding the requirements for an express trust, premises its point on an assertion that "[t]his express trust arose at the moment [Robert's] third-party case was settled for the amount of $550,000." Because this premise fails, Liberty Mutual's claim fails.

An express trust requires each of the following:

(1) a beneficiary, (2) a trustee, (3) a trust res so sufficiently described or capable of identification that title thereto can pass to the trustee, [and] (4) actual delivery of the corpus, its character considered[,] or a legal assignment of the same to the trustee actually conveying present title to the trustee; or the retention of title by the owner under circumstances which unequivocally disclose an intent to hold it for the use of another.

*Rouner v. Wise*, 446 S.W.3d 242, 251 (Mo. banc 2014) (quoting *Atl. Nat'l Bank of Jacksonville, Fla. v. St. Louis Union Trust Co.*, 357 Mo. 770, 211 S.W.2d 2, 5 (1948)).

8

In this case, the "trust res" that Liberty Mutual claims to be the beneficiary to—$136,308.08 from Robert's settlement proceeds—was withheld, by Liberty Mutual, and thereafter interpleaded into the registry of the trial court. Following the execution of the agreement and before the trial court's summary judgment, Robert never received the actual delivery, assignment, or conveyance of legal title of the alleged trust corpus. As such, no express trust "arose at the moment" of the agreement or thereafter before the trial court's ruling. No action by the trial court, therefore, "constitutes the breach of an express trust" where no express trust ever existed. Accordingly, Liberty Mutual's second point is denied.

## Decision

The trial court's judgment is affirmed.


GARY W. LYNCH, J. – OPINION AUTHOR

DON E. BURRELL, P.J. – concurs

JENNIFER R. GROWCOCK, Sp. J. – concurs